HERBERT M. LOBSENZ v. JERRY DAVIDOFF ET AL.

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and A. ARMENTANO, Js.

Argued June 6—decision released August 12, 1980

*Lawrence W. Kanaga,* for the appellant (named defendant).

*Keith D. Dunnigan,* with whom, on the brief, was *Stephen P. Sztaba,* for the appellant (defendant Joan Hyde).

*Daniel D. Peck,* for the appellee (plaintiff).

PARSKEY, J.   This appeal concerns a disputed ruling by the election moderator of the town of Westport with respect to the results of an election

for positions on that town's board of education. The germane facts are revealed by the trial court's memorandum of decision. Three vacancies on the five member board were to be filled by an election held on November 6, 1979. In accordance with the town charter, the Republican and Democratic parties each nominated two candidates. In addition to these four party-endorsed candidates, a fifth candidate, a registered Republican who was unsuccessful in gaining her party's endorsement, ran as a petition candidate. The three registered Republicans garnered the most votes, but the election moderator certified the Democrat with the most votes, who finished fourth overall, as the winner of the third position on the board in place of the Republican who finished third. The moderator's decision was predicated on his belief that the applicable minority representation laws precluded all three registered Republicans from being elected.

Herbert M. Lobsenz, the Republican displaced by the moderator's action, brought this suit against the Democratic candidate certified as the winner of the third position, Jerry Davidoff; the election moderator, Nicholas Thiemann; and the town clerk, Joan Hyde. Relying on General Statutes § 9-328,[1]

---

[1] "[General Statutes] Sec. 9-328. CONTESTS AND COMPLAINTS IN ELECTION OF MUNICIPAL OFFICERS AND NOMINATION OF JUSTICES OF THE PEACE. Any elector or candidate claiming to have been aggrieved by any ruling of any election official in connection with an election for any municipal office or a primary for justice of the peace, or any elector or candidate claiming that there has been a mistake in the count of votes cast for any such office at such election or primary, may bring a complaint to any judge of the superior court for relief therefrom. If such complaint is made prior to such election or primary, such judge shall proceed expeditiously to render judgment on the complaint. If such complaint is made subsequent to such election or primary, it shall be brought within ten days of

the plaintiff sought first a writ of mandamus ordering the defendants Thiemann and Hyde to declare the plaintiff elected to the board rather than the defendant Davidoff, and second, a court certification stating that the plaintiff had been elected to the board. Other claims for relief, including a declaratory judgment and a quo warranto determination, were not pursued to judgment below and play no role in this appeal. The trial court found the issues for the plaintiff and certified him the winner of the

such election or primary to any judge of the superior court, in which he shall set out the claimed errors of the election official or the claimed errors in the count. Such judge shall forthwith order a hearing to be had upon such complaint, upon a day not more than five nor less than three days from the making of such order, and shall cause notice of not less than three nor more than five days to be given to any candidate or candidates whose election or nomination may be affected by the decision upon such hearing, to such election official and to any other party or parties whom such judge deems proper parties thereto, of the time and place for the hearing upon such complaint. Such judge shall, on the day fixed for such hearing and without unnecessary delay proceed to hear the parties. If sufficient reason is shown, he may order any voting machines to be unlocked or any ballot boxes to be opened and a recount of the votes cast, including absentee ballots, to be made. Such judge shall thereupon, if he finds any error in the rulings of the election official, or any mistake in the count of the votes, certify the result of his finding or decision to the secretary of the state before the tenth day succeeding the conclusion of the hearing. Such judge may order a new election or primary or a change in the existing election schedule. Such certificate of such judge of his finding or decision shall be final and conclusive upon all questions relating to errors in the ruling of such election officials, and to the correctness of such count, and shall operate to correct the returns of the moderators or presiding officers, so as to conform to such finding or decision, except that this section shall not affect the right of appeal to the supreme court and it shall not prevent such judge from reserving such questions of law for the advice of the supreme court as provided in section 9-325. Such judge may, if necessary, issue his writ of mandamus, requiring the adverse party and those under him to deliver to the complainant the appurtenances of such office, and shall cause his finding and decree to be entered on the records of the superior court in the proper judicial district."

third position on the board. On appeal, only the named defendant attacks the trial court's decision on the merits.

Both the named defendant and the defendant Hyde, however, have raised a threshold question: Did the trial court have subject matter jurisdiction over this dispute? The defendants maintain that jurisdiction was lacking because the two candidates receiving the largest number of votes overall were not notified of the pendency of the proceedings below. Connecticut law governing hearings on disputed municipal elections requires notice "to be given to any candidate or candidates whose election or nomination may be affected by the decision upon such hearing." General Statutes § 9-328. That law also confers authority on the trial court to order a new election. Id. Because a new election for all three positions would affect all candidates, including the top two, the defendants argue that the trial court did not comply with the statute and did not have the proper parties before it. Thus, the defendants conclude that the court never had jurisdiction to hear this matter. We reach the opposite conclusion.

As noted earlier, no declaratory relief was granted in this case. Therefore, to the extent that the defendants rely on the holding of *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 290 A.2d 327 (1971), their claim fails because *Kelman* concerned a declaratory judgment and the particular notice requirements applicable thereto. Id., 526. See Practice Book, 1978, § 390 (d). A review of the defendants' broader claim, that the court had no jurisdiction under § 9-328 absent notice to the other candidates, demonstrates that it too is unsound.

We accept the premise "that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard." *State ex rel. Kelman* v. *Schaffer,* supra, 527. Section 9-328 particularizes this principle by requiring notice "to be given to any candidate or candidates whose election or nomination may be affected *by the decision upon such hearing.*" (Emphasis added.) We conclude that the election of the two candidates with the highest vote totals would not be affected by the court's decision because, under the circumstances and pleadings in this case, the court's decision would not include an order for a new election. Neither the plaintiff's complaint nor the court's order for a show cause hearing indicated that a new election was among the forms of relief sought. "Jurisdiction is the power in a court to hear and determine the cause of action presented to it." *Mazzei* v. *Cantales,* 142 Conn. 173, 175, 112 A.2d 205 (1955). " 'To constitute this there are three essentials: first, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and third, the point decided must be, in substance and effect, within the issue.' " *Case* v. *Bush,* 93 Conn. 550, 553, 106 A. 822 (1919). The only matter before the court was whether the election moderator's interpretation of the minority representation laws was correct. If so, the plaintiff would not be entitled to relief; if not, the plaintiff rather than the defendant Davidoff would be declared elected. The only issues presented to the court concerned these two individuals.

It is not claimed that the votes were not accurately canvassed, tabulated and reported nor is it claimed that any, much less a significant number, of the votes were fraudulently cast. Because there was no issue before the court which involved the validity of the election the court would have lacked authority to order a new election despite the general avail-ability of such remedy under § 9-328 in cases where such remedy is applicable. *New Haven Sand Blast Co.* v. *Dreisbach,* 104 Conn. 322, 329–30, 133 A. 99 (1926). Thus, on the basis of the issues properly before the court, the two candidates with the highest number of votes would retain their office irrespec-tive of how the court held.

This conclusion remains unchanged by the pres-ence, in § 9-328, of authority for the trial court to order a new election. The bare existence of this remedy in the statute does not require that, in a case where a new election is not sought by the parties and not contemplated by the court, the court must nevertheless proceed as if that remedy were to be implemented. The proper parties in this case were before the court and it had subject matter jurisdic-tion over the controversy before it.

A more detailed factual picture is necessary to decide this case on the merits. In the November 6, 1979 election, only three out of five of the positions on the board were to be filled. Of the two positions not up for election, one was occupied by a Repub-lican, one by a Democrat. The Westport town charter provides that "[n]o political party shall nominate more candidates than the number which, if elected, will give that party a bare majority of the members of the board. No elector shall vote

for more candidates than the largest number that any one political party may nominate." 28 Spec. Acts, No. 348, c. 5, § 1 (b). Respecting this limitation, the Republican party nominated two candidates, Dorothy A. Lyne and Herbert M. Lobsenz; the Democrats nominated Jerry Davidoff and Robert Davis. An extra wrinkle was added when Audrey Hanson, a registered Republican, ran as a petition candidate. The final vote tally showed Lyne with 3640, Hanson with 3283, Lobsenz with 3243, Davidoff with 2544, and Davis with 1733. Apparently on the basis of his interpretation of the town charter and of General Statutes §§ 9-167a, 9-204 and 9-204a the election moderator indicated that Democrat Davidoff rather than Republican Lobsenz won the third position on the board. We agree with the trial court that this decision was incorrect, and that none of the cited provisions operates to deny the plaintiff the position he won by virtue of the number of votes he received.

As indicated earlier, chapter 5 section 1 (b) of the town charter limits both the number of candidates each party may nominate and the number of votes each elector may cast.[2] The Hanson candidacy did not offend this provision because she was not nominated by the Republican party. With respect to the charter, her Republican registration is of no moment because the charter does not purport to limit directly the number of board members who belong to any one particular political party. It only controls the number of party nominations. Compare

[2] It is not claimed that the provision governing the number of votes each elector may cast was violated.

General Statutes § 9-167a (directly limiting the number of board members who may belong to one political party).[3]

In construing provisions which regulate the electoral process for the purpose of securing minority representation one must differentiate between those which limit the number of candidates which a political party may nominate or for whom an elector may vote and those which limit the number of members of one party who may serve on a public body. The focus of the former provisions is on the road to the forum whereas that of the latter is on the forum itself. We must therefore examine the provisions as we find them. We must assume that if one method is chosen rather than the other the provision chosen was intended to act in accordance with the plain meaning of its language. *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978).

General Statutes § 9-204[4] also aims at ensuring minority representation on local boards of education. The vehicle chosen by the legislature in this instance was to limit the number of votes each elector may cast. When combined with another statute[5]

---

[3] General Statutes § 9-167a limits the composition of the board in the present case to no more than four members from the same political party. If the plaintiff were declared elected, there would be four Republicans on the board, thus satisfying the statute.

[4] "[General Statutes] Sec. 9-204. MINORITY REPRESENTATION ON BOARD OF EDUCATION. When the number of members to be elected to the board of education for the same term at any election is even, no elector shall vote for more than half that number. When the number of members to be elected to the board of education for the same term at any election is odd, no elector shall vote for more than a bare majority of that number."

[5] "[General Statutes] Sec. 9-414. NOMINATIONS NOT TO EXCEED PLACES TO BE FILLED; MUNICIPAL PRIMARIES. No town committee, caucus or convention shall endorse and certify to the clerk of a municipality, and no primary shall choose, more candidates for

limiting nominations, the overall effect in the present case was to allow each major party to nominate, and each elector to vote for, two candidates. Like the town charter, these statutes do not attempt to control directly the composition of the board by political party affiliation. Instead, they operate indirectly, through the nomination process.

The last line of defense against the plaintiff's assumption of the third position on the board is General Statutes § 9-204a.[6] The plaintiff concedes that this section, if applicable, bars his election.

Section 9-204a applies to an election for the board of education only if a town has authorized (1) "the

nomination to municipal office or more persons as members of a town committee or as delegates to a convention than an elector may vote for in each such case."

[6] "[General Statutes] Sec. 9-204a. NOMINATION AND VOTING FOR FULL NUMBER OF BOARD MEMBERS TO BE ELECTED AUTHORIZED. Notwithstanding the provisions of sections 9-204 and 9-414 and of any special act or town charter, any town may, by charter, or by referendum vote taken at any regular election in such town pursuant to either a vote of its legislative body or a petition signed by at least five per cent of the electors of such town as established by the last-preceding registry list of such town, authorize the nomination by any political party of candidates for election as members of the board of education of such town equal to the number of members of said board to be elected at such election, and authorize the electors of such town to vote for the full number of such members to be elected, provided not more than one-half of the members of said board declared elected to the same term at such election shall be of the same political party if the number to be elected is even and not more than a bare majority thereof shall be members of the same political party if the number to be elected is odd. If the number of candidates, sufficient to fill the offices voted on, receiving the highest number of votes at any such election are of the same political party, those persons sufficient to fill one-half or a bare majority of such offices, as the case may be, who received the highest number of votes among such candidates shall be declared elected and those persons receiving the next highest number of votes who do not belong to such political party, sufficient in number to fill the remaining offices, shall be declared elected."

nomination by any political party of candidates for election as members of the board of education of such town equal to the number of members of said board to be elected at such election" and (2) "the electors of such town to vote for the full number of such members to be elected." General Statutes § 9-204a. The defendant first hypothesizes some situations where the Westport town charter would sanction such a result. For instance, in years when two positions on the board of education are to be filled, the minority party may nominate, and the voters may vote for two candidates. In all years, a third party, without incumbent representation on the board, may nominate, and the voters may vote for, the full number of members to be elected.

The defendant completes his argument by urging us to interpret the words "any political party" as meaning "some political parties" rather than "all political parties." The plaintiff, on the other hand, contends that "any political party" in § 9-204a must be held to mean "all political parties." Both meanings have been attributed to the word "any." See *Muller* v. *Town Plan & Zoning Commission*, 145 Conn. 325, 328–29, 142 A.2d 524 (1958). To find the sense in which it is employed in § 9-204a, we look to the wording of the statute, its legislative history and its basic policy. Id., 329.

During the legislative debate on the bill that was later enacted as Public Acts 1973, No. 73-266 and codified as § 9-204a of the General Statutes, Representative Albert W. Cretella, Jr., noted that under state statutes then in effect, no political party could nominate more than one-half of the number of vacancies on a board of education if the number of vacancies was even, or, if the number of vacancies

was odd, no more than a bare majority. 16 H. R. Proc., Pt. 8, 1973 Sess., pp. 4101–4102. He then went on to explain that in order to take advantage of the new option provided by the bill under consideration, a town would have to choose affirmatively to do so by way of a referendum.[7] If "any" as used in the statute means "some," as the defendant maintains, there would be no need for Westport, or any town with a similar charter provision, to take special action to opt for the new nomination guidelines because the statute would apply by its own terms. We conclude that the meaning of "any" intended by the legislature was "all."

It is clear that the Westport town charter does not allow all political parties to nominate a number of candidates equal to the number of vacancies even though it does allow some parties to do so. Further, the charter does not generally authorize the electors to vote for the full number of vacancies. It does so provide under the same circumstances posited above in which a minority party could conceivably

[7] Representative Albert W. Cretella, Jr., remarked as follows:

"This bill if adopted, will allow towns at a local option the right to have a political party if they so choose nominate as many persons as there are vacancies to fill and allow an elector to vote for as many vacancies as there are to fill.

"The action comes about in a town only after a town has either amended its charter to permit it, and you will note that a charter change requires a referendum, or in the absence of a charter change the local option will be in the form of a referendum. In either case the town can only adopt the provisions of this bill if a referendum is held, either a charter referendum or a referendum authorized by the legislative body of the town, or a referendum authorized by a petition.

"The amendment which was offered clearly is to indicate that there must be a referendum in either case. If the town adopts the referendum, then the party can nominate as many vacancies as there are to be filled." 16 H. R. Proc., Pt. 8, 1973 Sess., p. 4102.

nominate a number of candidates equal to the number of vacancies, but this limited authorization does not satisfy the requirement of § 9-204a.

Because the threshold requirements for the section's applicability have not been met, the section, by its own terms, does not apply. Thus the second sentence of the section,[8] which contains the operative provisions ensuring minority representation by detailing how board positions are to be filled in a town that has opted for the § 9-204a nomination procedures, never comes into play. The trial court properly concluded that no statute or charter provision operated to bar the plaintiff from assuming the board position to which he was duly elected.

There is no error.

In this opinion COTTER, C. J., BOGDANSKI and A. ARMENTANO, Js., concurred.

PETERS, J. (dissenting). I do not agree that the trial court had authority to hear this case without having first given notice to all of those elected to the board of education in the contested election.

There is no dispute between us that if a new election had been a possible remedy before the trial court, then those whose election might have been jeopardized would have been entitled to notice and to an opportunity to be heard. General Statutes § 9-328; *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 527, 290 A.2d 327 (1971). We disagree about the interpretation of that part of § 9-328 which provides, without limitation, that a "judge may order a new election" if he "finds any error in the rulings of the election official." As I read this language,

---

[8] See footnote 6, supra.

once the validity of an election official's ruling has been put into question, the court is obligated to entertain the possibility of ordering a new election. It may exercise its judgment not to make such an order, but it may not refuse to consider the possibility in the first place. I do not believe that those who ask a court to overturn the ruling of an election official may insist, by the form of their pleadings, that the court take the case with blinders on. The delicacy of judicial intrusion into the electoral process compels me to the conclusion that such inquiries, once initiated, may not be artificially limited.