## Sophie Gordon *v.* John Tufano

Peters, Healey, Parskey, Armentano and Shea, Js.

Argued May 14—decision released September 28, 1982

*Michael J. Flaminio,* for the appellant (defendant).

*David Haymond,* for the appellee (plaintiff).

Parskey, J. This is an action pursuant to General Statutes § 49-13,[1] to discharge a mortgage and lis pendens placed on the land records against certain real estate owned by the plaintiff located at White Sands Beach in the town of Old Lyme. On July 24, 1958, the plaintiff executed a promissory note in the amount of $3000 payable to the order of the defendant. A mortgage deed securing the note was also executed in the defendant's favor. The terms of the note provided for interest at a rate of 6 percent per annum, payable quarterly upon the unpaid balance, together with all taxes assessed against the holder thereof and together with all costs and attorney's fees incurred in any action to collect said note. The note also provided for payment of the principal sum and interest payable

[1] General Statutes § 49-13 provides in relevant part: "PETITION FOR DISCHARGE OF MORTGAGES OR OF INEFFECTIVE ATTACHMENT, LIS PENDENS OR LIEN. DAMAGES. (a) When the record title to real property is encumbered (1) by any undischarged mortgage, and (A) the mortgagor or those owning his interest therein have been in undisturbed possession of the property for at least seventeen years after the expiration of the time limited in the mortgage for the full performance of the conditions thereof, and for seventeen years next preceding the commencement of any action under this section, or (B) when the promissory note or other written evidence of the indebtedness secured by the mortgage is payable on demand and seventeen years have passed without any payment on account of such note or other written evidence of indebtedness, or (C) when the mortgage does not disclose the time when the note or indebtedness is payable or disclose the time for full performance of the conditions of the mortgage and seventeen years have passed without any payment on account of the promissory note or other written evidence of indebtedness, or (D) when the note or evidence of indebtedness has been paid or bona fide offer and tender of the payment made pursuant to section 49-8, or (E) when the mortgage has become invalid, and in any of such cases no release of the encumbrance to secure such note or evidence of indebtedness has been given, or (2) by a foreclosed mortgage and the mortgagor has made a bona fide offer and tender of payment of the foreclosure judgment on or before his law day and the mortgagee has refused to accept payment, or (3) by an attachment, lis pendens or other lien which has become of

quarterly as follows: Seven hundred and fifty ($750) dollars together with interest on the 24th day of October, 1958, and a like sum quarterly thereafter until said principal sum, with interest, should be paid, and said note contained a provision for default in the event of nonpayment of any said quarterly payments for a period of ten (10) days after any payment should become due and payable at the option of the holder thereof.

No payment was ever made by the plaintiff and on or about March 17, 1959, the defendant brought an action seeking to foreclose the mortgage. As a result of this, the property was encumbered by a lis pendens noticing the commencement of the foreclosure action. On or about September 19, 1959,

no effect, the person owning the property, or the equity in the property, may bring a petition to the superior court within the judicial district in which the property is situated, setting forth the facts and claiming a judgment as hereinafter provided. The plaintiff may also claim in the petition damages as set forth in section 49-8, if he is aggrieved by the failure of the defendant to execute the release therein prescribed. . . .

(c) Such notice having been given according to the order and duly proven, the court may proceed to a hearing of the cause at such time as it deems proper, and, if no evidence is offered of any payment on account of the debt secured by the mortgage within said period of seventeen years, or of any other act within said period in recognition of its existence as a valid mortgage, or if the court finds the mortgage has been satisfied but no release given as evidence of such satisfaction, or if the court finds that a bona fide offer and tender of payment of the foreclosure judgment or mortgage has been made and refused, or if the court finds the attachment, lis pendens or other lien has become of no effect, the court may render a judgment reciting the facts and its findings in relation thereto and declaring the mortgage, foreclosure judgment, attachment, lis pendens or other lien invalid as a lien against the real estate, and may order payment of any balance of indebtedness due on the mortgage or foreclosure judgment to the clerk of the court to be held for the benefit of the mortgagee or the persons interested and to be paid to the mortgagee by the clerk of the court upon application of the mortgagee or persons interested following the execution of a release of mortgage."

the foreclosure action was withdrawn[2] but the lis pendens was not and still has not been released by the defendant.

The trial court found that the plaintiff has been in undisturbed possession of her property for at least seventeen years after the expiration of the time limited in the mortgage for the full performance of the conditions thereof and for seventeen years next preceding the commencement of any action pursuant to General Statutes § 49-13 (a) (1). The court also found that the seventeen year period had passed without any payment on account of the mortgage or of any other act within that time recognizing its existence as a valid mortgage. General Statutes § 49-13 (c). It held that the mortgage and the lis pendens were invalid as liens against the real estate and awarded damages to the plaintiff in the amount of $1000 plus costs. Finally, the court held "that the mortgage note subject to this action violates the terms of Section 37-5 and 37-9 of the Connecticut General Statutes and is void nunc pro tunc and unenforceable."[3] From this judgment, the defendant has appealed.

---

[2] The entire file for this foreclosure action was destroyed by law, by the clerk's office on July 19, 1966.

[3] General Statutes § 37-5 provides: "Sec. 37-5. NOTES NOT TO BE ACCEPTED FOR GREATER AMOUNTS THAN LOANED. No person and no firm or corporation, or agent thereof, shall, with intent to evade the provisions of section 37-4, accept a note or notes for a greater amount than that actually loaned."

General Statutes § 37-9 provides: "Sec. 37-9. LOANS TO WHICH PROHIBITIONS DO NOT APPLY. The provisions of sections 37-4, 37-5 and 37-6 shall not affect any loan made prior to September 12, 1911, nor any loan made by any national bank or any bank or trust company incorporated under the laws of this state, any federal or state chartered savings and loan association or any credit union or federal credit union nor any bona fide mortgage of real property for a sum in excess of five thousand dollars, nor any loan carrying an interest rate of not more than eighteen per cent per annum made to a foreign or domestic corporation organized for profit and engaged

The defendant has raised three claims of error on appeal. First, he claims that the evidence adduced at trial was insufficient to support a judgment for the plaintiff pursuant to General Statutes § 49-13. Specifically, he claims that there was evidence that, within the required seventeen year period, the plaintiff recognized the existence of the mortgage as a valid mortgage. Second, he claims that the conclusions reached by the trial court lacked a sufficient factual basis due to alleged inconsistencies. Finally, he claims that the trial court abused its discretion in holding that the mortgage note was void and unenforceable because it violated the provisions of General Statutes §§ 37-5 and 37-9 when neither party raised the issue of usury, illegality or unconscionability through the pleadings or at trial.

At the conclusion of trial and during final arguments, the court raised, for the first time, the usury issue by stating: "I am going to ask both gentlemen

primarily in commercial, manufacturing or industrial pursuits, provided the original indebtedness to be repaid is in excess of ten thousand dollars, or, in the case of one or more advances of money of less than ten thousand dollars made pursuant to a revolving loan agreement or similar agreement or a loan agreement providing for the making of advances to the borrower from time to time up to an aggregate maximum amount, the total principal amount of all loans owing by the borrower to the lender at the time of any such advance is in excess of ten thousand dollars. No provision of this section shall prevent any such bank, trust company or federal or state chartered savings and loan association, credit union or federal credit union from recovering by an action at law the amount of the principal and the interest stipulated or interest at the legal rate, if interest is not stipulated, in any negotiable instrument which it has acquired for value and in good faith without notice of illegality in the consideration. For the purpose of this section, 'interest' shall not be construed to include attorney's fees, including preparation of mortgage deed and note, security agreements, title search, waivers and closing fees, survey charges or recording fees paid by the mortgagor or borrower."

who are Commissioners of the Superior Court that what if the court in reviewing the evidence of this case decides that this usury note [is] in violation of 37-9 in that a mortgage on real estate less than $5,000 carries an interest rate of over 16% on the installments on the notes. Whether it is pleaded or not, what do you think the position of a Superior Court Judge is who hears testimony from which he can draw that conclusion?" "There is evidence before the Court that a note was signed for $3,000— . . . and only $2,500 was forthcoming, that is in violation of 37-9 which states that a note for under $5,000 on which there is a mortgage on real estate shall not exceed 12%. What do you think as Commissioners of the Superior Court the position of the Superior Court Judge should be if he believes that evidence? Do you understand what I am saying?"

Counsel for the defendant responded by stating that the usury issue was not pleaded and that, if it had been, he might have elicited more testimony on the issue at the trial.

Although the defendant forcefully argues that the court should have allowed a reasonable opportunity to make a factual showing about whether the note, in fact, violated General Statutes §§ 37-5 and 37-9; see *Hamm* v. *Taylor,* 180 Conn. 491, 497, 429 A.2d 946 (1980); we do not base our decision on that ground. We find that the trial court lacked jurisdiction to determine the validity of the note on the usury ground because that issue had not been raised in the pleadings. *Lobsenz* v. *Davidoff,* 182 Conn. 111, 116–17, 438 A.2d 21 (1980). We also find that the trial court lacked jurisdiction to discharge the mortgage pursuant to § 49-13 because

based on the evidence the validity of the mortgage was in dispute. *Simonelli* v. *Fitzgerald,* 156 Conn. 49, 54, 238 A.2d 418 (1968). We therefore find error in the trial court's decision.

The plaintiff expressly brought this action pursuant to General Statutes § 49-13.[4] "The statute 'does not declare that a mortgage upon which no payment has been made for a period of seventeen years or which has not been recognized as a valid mortgage within that period is unenforceable, but it gives the court the right to declare it invalid.' [*Arnold* v. *Hollister,* 131 Conn. 34, 38–39, 37 A.2d 695 (1944)]. The purpose of a statute of this type is to provide a simple method whereby a mortgage, *the invalidity of which is undisputed,* may be declared invalid by the court and removed as a cloud on the title to the property. See *Lewis* v. *Crowell,* 205 Mass. 497, 499, 91 N.E. 910 [1910]; *McMahan* v. *McMahan,* 205 Mass. 99, 100, 91 N.E. 298 [1910]; *Mitchell* v. *Bickford,* 192 Mass. 244, 246, 78 N.E. 453 [1906]. *The statute gives the court no jurisdiction to determine the validity or invalidity of a disputed mortgage of long standing. McMahan* v. *McMahan,* supra, 101." (Emphasis added.) *Simonelli* v. *Fitzgerald,* supra, 53–54; see *O'Connell* v. *Everett,* 274 Mass. 602, 175 N.E. 44 (1931). Additionally, when the trial court found that the mortgage note was void and unenforceable on usury grounds, it put in dispute and resolved the issue of the validity of the mortgage. It is clear from our holding in *Simonelli* that it had no jurisdiction to

---

[4] The relief sought by the plaintiff was a "(1) Judgment reciting the facts contained herein declaring the said mortgage and lis pendens invalid as against said real estate; (2) Damages of One Thousand ($1,000.00) Dollars; (3) Such other legal and equitable relief as the court deems appropriate."

do so.[5] "Where there is a controversy between the parties as to the validity and effect of a mortgage of this class, there are other ways of settling it. This statute is not applicable to such cases."[6] *McMahan* v. *McMahan*, supra. It "authorizes an action in which affirmative relief may be granted if *and only if* the conditions specified in it are met." (Emphasis added.) *Arnold* v. *Hollister*, supra. The plaintiff's own testimony indicated that, within the statutory seventeen year period, there had been a conversation between the parties in which the plaintiff was told that, because of the mortgage, the house could be taken away from her. She did not then demur from this representation. That testimony sufficiently put into issue the continued validity of the mortgage so that § 49-13 cannot be relied upon to afford the plaintiff the relief she seeks.

The case of *Kaufman* v. *Samuelson*, 134 N.J.L. 573, 49 A.2d 479 (1946), presented an issue strikingly similar to the one before us. In *Kaufman*, the focal issue was whether the judge had the authority to entertain the mortgagor's application to direct the county clerk to cancel a real estate mortgage of record under a New Jersey statute permitting such action where no person representing the holder of the mortgage therein "shall 'appear at the time and place specified therein [on the rule to show cause directed to and served upon the mortgagee issued on the mortgagor's application for cancellation]' . . . ." *Kaufman* v. *Samuelson*, supra, 576. On the

---

[5] It also appears that the language of General Statutes § 49-13, itself, does not allow a court to hold the note invalid but, instead, constrains the court to declare "the mortgage, foreclosure judgment, attachment, lis pendens or other lien invalid as a lien against the real estate . . . ." See § 49-13(c).

[6] The plaintiff could bring an equitable action to quiet title, exclusive of the statutory remedy, to settle the matters at issue.

hearing of the rule, the mortgagor and mortgagee appeared with their counsel and each actively participated in the case, and witnesses, including the parties, were sworn and testified. A question of jurisdiction of the subject matter arose under the cancellation statute, i.e., R.S. 2:66-3, N.J.S.A. That statute provided in pertinent part: "When the notice of the application for the cancellation of record of a mortgage shall have been served or advertised as provided in section 2:66-2 . . . *and the person named in the order for service or advertisement of the notice, or any person representing him or interested therein, shall not appear at the time and place specified therein* . . . and the judge shall be satisfied that the essential facts alleged in the application for cancellation are true . . . the judge may, by order, direct that the mortgage be cancelled of record . . . ." (Emphasis added.) *Kaufman* v. *Samuelson,* supra, 575–76. The court pointed out that the "authorization" of the judge to order cancellation of a mortgage under this statute "is limited to cases where no person representing the holder of the mortgage or interest therein shall 'appear at the time and place specified therein . . . .'" It held that the mortgagee did legally "appear" under the statute and concluded that the judge "was without authority or jurisdiction . . ." to cancel the mortgage of record. *Kaufman* v. *Samuelson,* supra, 576–77.[7] In the case before us, as in *Kaufman,* the court acted without jurisdiction to do so.

[7] In *Kaufman,* the New Jersey Supreme Court directed that "an order be presented staying the proceedings and restraining the judge from proceeding further with the cause, without prejudice, however, to the right of the mortgagor or mortgagee to institute such other available proceeding as either may deem fit and proper." *Kaufman* v. *Samuelson,* 134 N.J.L. 573, 577, 49 A.2d 479 (1946).

There is error, the judgment is set aside and the case is remanded with direction to dismiss the action.

In this opinion PETERS, J., concurred.

SHEA, J. (concurring). My only reason for writing separately is simply to clarify what I understand to be the effect of the remand directing that the action be dismissed. I would have preferred that we simply direct that judgment enter for the defendant, following the precedent of *Simonelli* v. *Fitzgerald,* 156 Conn. 49, 238 A.2d 418 (1968), in which such a judgment of the trial court rendered in a similar case was affirmed on appeal.

"Dismissal" is a word applied to the termination of an action in a variety of contexts and it imports different legal consequences. *Jenkins* v. *Ellis,* 169 Conn. 154, 159, 362 A.2d 831 (1975); 24 Am. Jur. 2d, Dismissal, Discontinuance, and Nonsuit § 1. I do not believe that use of the word here implies that the trial court lacked jurisdiction to determine the statutory cause of action under § 49-13 pleaded which, under the narrow reading of that statute approved in *Simonelli,* required the plaintiff to establish that there was no genuine issue of fact concerning the invalidity of the mortgage to be discharged. See Practice Book § 384. The failure of the plaintiff to sustain this burden did not deprive the trial court of jurisdiction over the action set forth in the complaint.

The inability of the plaintiff to present a case qualifying for a discharge of the mortgage under the statute does not warrant an adjudication declaring the defendant's mortgage to be valid. For this reason a judgment "for the defendant" might be

misunderstood. Our determination does not foreclose the plaintiff from bringing a different action to obtain the same relief which she has inappropriately sought under § 49-13. She could not, of course, renew this statutory action relying upon the same grounds alleged in this complaint.

As I understand these consequences to flow from our direction to "dismiss the action," I agree fully with the court's opinion.

ARTHUR H. HEALEY, J. (concurring). I concur in the result reached by the majority but not in the route used to attain it. General Statutes § 49-13 is a statute that gives only a narrow and limited jurisdiction. See *Simonelli* v. *Fitzgerald,* 156 Conn. 49, 53-54, 238 A.2d 418 (1968). "The statute [§ 49-13] gives the court *no jurisdiction* to determine the *validity or invalidity* of a disputed mortgage of long standing." (Emphasis added.) *Simonelli* v. *Fitzgerald,* supra, 54. The purpose of such a statute "is to provide a simple method whereby a mortgage, *the invalidity of which is undisputed,* may be declared invalid by the court and removed as a cloud on the title to the property." (Emphasis added.) *Simonelli* v. *Fitzgerald,* supra. It is thus apparent from *Simonelli* that the validity or invalidity of a mortgage is a determination a court has no jurisdiction to make under § 49-13. The trial court, however, did hold that this mortgage was usurious thus determining its validity—a holding it was clearly without jurisdiction to make. Having done this, it was also without jurisdiction to do anything further in the name of, or under, § 49-13 and it was without jurisdiction to reach the matter of the evidence of "recognition" of the mortgage which the majority has little difficulty in

doing. Simply put, § 49-13, under *Simonelli,* cannot afford relief where there is a mortgage of *disputed* validity. We are presented with a mortgage *determined* to be invalid and to brush the absence of the jurisdictional predicate aside and reach the recognition of the mortgage issue eviscerates the jurisdictional grant of § 49-13.

The case of *Kaufman* v. *Samuelson,* 134 N.J.L. 573, 49 A.2d 479 (1946), cited by the majority lends support. In that case the New Jersey court pointed out that the judge's "authorization" to order cancellation of the mortgage under the New Jersey statute "is limited to cases where no person representing the holder of the mortgage or interest therein shall 'appear at the time and place specified [by the court in its rule to show cause why the mortgage should not be cancelled].' " *Kaufman* v. *Samuelson,* supra. Because someone did legally "appear" representing the holder of the mortgage, the court held that the judge "was without authority or jurisdiction . . ." to cancel the mortgage. *Kaufman* v. *Samuelson,* supra, 577. In the case before us, as in *Kaufman,* once the trial court held the mortgage invalid for usury, as it patently did, the court was without further jurisdiction to act and should have dismissed the matter for lack of jurisdiction.

Therefore, I concur in the result.

In this opinion Armentano, J., concurred.