******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HARRISON AMADASUN *v.* BONNIE ARMSTRONG, TOWN CLERK OF SOUTH WINDSOR
## (SC 21196)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiff, a candidate for town council in the November, 2025 South Windsor municipal election, appealed from the trial court's judgment dismissing his action brought pursuant to the statutes (§§ 9-328 and 9-371b) affording a candidate who is aggrieved by any ruling of any election official in connection with a municipal election or referendum, respectively, expedited judicial review of his or her claims. In the November, 2025 municipal election, South Windsor electors approved, by way of referendum, several revisions to the South Windsor charter, one of which changed the maximum number of individuals affiliated with a particular political party who could serve on the nine member town council from six individuals to a bare majority of five. During that election, electors also voted for town council candidates, with six Democratic Party candidates receiving more votes than any Republican Party candidate. The plaintiff received the sixth highest vote total of the Democratic candidates, and B received the fourth highest vote total of the Republican candidates. Following the election, the defendant, the South Windsor town clerk, determined that the bare majority charter revision, as approved in the referendum, applied to the 2025 town council election, even though the minutes from a meeting of the South Windsor Charter Revision Commission at which the commission proposed the bare majority charter revision indicated that the revision, if approved, would not take effect until the November, 2027 South Windsor municipal election. The town clerk thereupon issued a preliminary list of election winners, declaring that B, rather than the plaintiff, had won the final seat on the town council. The plaintiff claimed in the trial court that he was aggrieved by the town clerk's decision to apply the bare majority charter revision in determining which candidates had won the November, 2025 town council election. The trial court rendered judgment dismissing the plaintiff's action for lack of subject matter jurisdiction, concluding that the town clerk's decision was not a ruling of an election official within the meaning of §§ 9-328 and 9-371b. On appeal from the trial court's judgment of dismissal, the plaintiff claimed that the trial court incorrectly had concluded that the town clerk's application of the bare majority charter revision to determine the results of the November, 2025 town council election was not a ruling of an election official for purposes of §§ 9-328 and 9-371b. *Held*:

The trial court improperly dismissed the plaintiff's action for lack of subject matter jurisdiction, and, accordingly, this court reversed the trial court's judgment and remanded the case for further proceedings.

The town clerk's decision to apply the newly approved bare majority charter revision, rather than the provisions of the charter that purportedly were in effect on the day of the November, 2025 municipal election, to determine the composition of the town council from that same election constituted a ruling of an election official for purposes of §§ 9-328 and 9-371b.

The town clerk was required to determine the winners of the town council election pursuant to statute (§ 9-167a (c)) and to report those winners to the secretary of the state pursuant to statute (§ 9-320 (a)), and the fact that these two statutory directives are codified in title 9 of the General Statutes strongly suggested that they are electoral in nature.

The town clerk, in deciding that the bare majority charter revision was applicable to the November, 2025 municipal election, necessarily interpreted the South Windsor charter in order to determine the effective date of that revision, which, in turn, directly affected the accuracy of the results that the town clerk determined under § 9-167a (c) and reported under § 9-320 (a).

Moreover, the town clerk's resolution of a question about the applicability of a charter revision to the town council candidates elected simultaneously with the approval of that revision is within the purpose of the election contest statutes, and the town clerk's decision to apply the newly approved bare majority charter revision ultimately dictated the answer to the question of who won the election.

Argued January 13—officially released February 17, 2026[*]

*Procedural History*

Action challenging, inter alia, the defendant's determination that certain revisions to the town charter, which had been approved by town electors by way of referendum, were applicable to the 2025 municipal election for town council, brought to the Superior Court in the judicial district of Hartford, where the court, *Cobb, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*John B. Kennelly*, for the appellant (plaintiff).

*Jesse A. Langer*, with whom, on the brief, were *Richard D. Carella* and *Brian C. Hoeing*, for the appellee (defendant).

*Opinion*

ALEXANDER, J. This expedited appeal arises from a dispute concerning whether certain revisions to the South Windsor Charter (charter), approved by town electors by way of referendum in the November 4, 2025

---

[*]February 17, 2026, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

South Windsor (town) municipal election, determine the outcome of the election of the town council, which was conducted that same day. The sole issue presented requires us to decide if the town clerk, the defendant, Bonnie Armstrong, made a "ruling of [an] election official" within the meaning of General Statutes §§ 9-328 and 9-371b when she applied minority representation requirements from the newly adopted charter revisions in determining who had won the town council election. As a result of her decision to apply the new charter revisions, the defendant awarded the final seat on the town council to Richard M. Balboni, Jr.,[1] rather than to the plaintiff, Harrison Amadasun.[2] The trial court dismissed the plaintiff's action after concluding that the defendant's decision was not "a ruling of an election official" for purposes of §§ 9-328 and 9-371b. We disagree and reverse the judgment of the trial court.

The record reveals the following facts, as alleged in the operative complaint and attached exhibits. See, e.g., *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009). In September, 2023, the town council established a charter revision commission (commission). At that time, §§ 203 and 204 of the charter provided for minority representation on the town council and limited the nine member town council to a maximum of six members

---

[1] The plaintiff named Stephanie Thomas, in her official capacity as secretary of the state, and the State Elections Enforcement Commission as defendants for notice purposes only pursuant to §§ 9-328 and 9-371b. They appeared but did not otherwise participate in this action.

The plaintiff also named Balboni as a notice defendant. He appeared but did not participate in the hearing before the trial court or in this appeal. After we announced our decision from the bench in this appeal, the plaintiff amended his complaint to add a quo warranto count and to name Balboni as a defendant with respect to that count. As of the date of this opinion, a trial on the merits is scheduled for April 1 and 2, 2026.

At our request, counsel from the Office of the Attorney General appeared at oral argument before this court to represent the position of the secretary of the state on the statutory issues in this appeal. The court appreciates the participation of counsel from the Office of the Attorney General in this matter.

[2] The Office of the Appellate Clerk has corrected the spelling of the plaintiff's last name in this appeal.

of any political party. Those sections also precluded any political party from nominating and electing more than six candidates for the town council. South Windsor Charter §§ 203 and 204 (2023). The commission proposed revisions to §§ 203 and 204 that would increase minority representation by decreasing the majority number from six to five, thus allowing for only a "bare majority . . . ." The proposed charter revisions eliminated the elected positions of treasurer and board of selectmen, and converted the town clerk position from an elected office to an appointed one. The minutes from the commission's March 18, 2025 meeting indicate that the proposed charter revisions would take effect on November 2, 2027; the revisions themselves indicate that the town clerk would be an appointed office on that date. Approval of the proposed charter revisions was a referendum question on the ballot in the town's municipal election held on November 4, 2025. The town's voters approved the revisions in that election.

In that same municipal election, the town's voters elected officers, including the town council, board of education, board of selectmen, planning and zoning commission, town clerk, and town treasurer. Consistent with the provisions of the charter that governed at the time of the election, the Democratic and Republican Parties each nominated six candidates for the town council, and the ballot instructed the voters to choose "[u]p to [s]ix" candidates for the town council, rather than the five prescribed by the proposed revised charter provisions. Each of the six Democratic candidates, one of whom was the plaintiff, received more votes than any Republican candidate; the plaintiff received the sixth highest vote total of the Democratic candidates, and Balboni received the fourth highest vote total of the Republican candidates.

Shortly after election day, the defendant issued a list of the "[p]reliminary [w]inners" of the election. Because the defendant had determined that the bare majority charter revisions, as approved in the referendum, would apply to the 2025 town council election consistent with

their "adoption date of November 5, 2025," the list of preliminary winners declared that Balboni, rather than the plaintiff, had won a seat on the town council. The defendant applied the November 5, 2025 adoption date to the election for town council because § 1005 (b) of the charter, which preexisted the work of the commission, provides that "[t]he effective date of [charter] revisions, if adopted by a referendum, shall be the day immediately following such referendum."[3] The defendant's list of preliminary winners also stated that three individuals had been elected to the board of selectmen and one individual had been elected treasurer, despite the elimination of those positions in the charter revisions. On November 10, 2025, the defendant swore all of the purported election winners into office, including the three selectmen, the treasurer, and the nine member town council, with Balboni seated instead of the plaintiff.

The plaintiff brought this action pursuant to §§ 9-328 and 9-371b, which provide for the expedited review of election disputes in municipal and referenda elections, respectively. The plaintiff claimed that he was "aggrieved by the ruling of the defendant in her capacity as an election official to apply the charter revisions to the November 4, 2025 municipal election . . . ." He claimed that he was harmed because **(1)** "[a]ssuming arguendo that the charter revisions adopted by referendum were effective as of November 5, 2025, their application to . . . the November 4, 2025 election results constitutes a retroactive application of a law [that] improperly compromises a substantive right," **(2)** "[t]he defendant's unequal and subjective application of the charter revisions by seating the treasurer and board of selectmen but not all six Democratic town council candidates is a violation of the equal protection clauses of both the Connecticut and

[3] In light of General Statutes §§ 9-320 and 9-371, we express no view on the effective dates of either the election of town council candidates or the referendum changes. We also express no view as to whether the charter revisions apply retroactively to the results of the November 4, 2025 election or only prospectively to the next municipal election. These issues will be before the trial court when it considers the merits of this case.

United States constitutions," and (3) "[t]he defendant's interpretation that the charter revisions . . . were to be effective on November 5, 2025, and not November 2, 2027, is clearly erroneous and improper."

The defendant moved to dismiss the action on the ground that the plaintiff was not statutorily aggrieved because §§ 9-328 and 9-371b are limited to challenges to "ruling[s] of an election official" and "[do] not provide for jurisdiction over charter amendment disputes." Following a hearing, the trial court granted the motion to dismiss, concluding that the plaintiff had not established that the defendant's application of the revised charter provisions was a "ruling of an election official . . . ." The court determined that the defendant's decision did not "involv[e] the election process, as required under the statutes," because it "occurred after the election was over, the votes were counted, and there were no claims regarding the number of votes each candidate for town council received. [The defendant's] decision was not applicable to 'the election process' but involved an after election application of the revised charter, the effective date provision." The trial court concluded that "this determination or ruling was made in conformity with the charter revisions, and the defendant was merely applying and abiding by the law." Accordingly, the trial court granted the defendant's motion to dismiss and rendered judgment thereon.

The plaintiff appealed directly from the judgment of dismissal to this court.[4] Following an expedited brief-

---

[4] General Statutes § 51-199 (b) (5) permits a direct appeal to this court in "any election or primary dispute brought to the Supreme Court pursuant to . . . [General Statutes §] 9-325 . . . ." Neither party to this case followed the appellate process contemplated by § 9-325, which requires "any party to the complaint" to raise "any question of law . . . [that] should be reviewed by the Supreme Court" and the trial court to "transmit" its decision, such certified questions of law, and a "proper finding of facts" to the chief justice, who then calls a "special session" of this court to hold a hearing within fifteen days of the trial court's judgment "upon the questions of law so certified." Nonetheless, because § 9-325 provides that "[n]othing in [that] section shall be considered as prohibiting an appeal to the Supreme Court from a final judgment

ing schedule, we held oral argument on January 13, 2026. Immediately after oral argument, we issued the following order: "The judgment dismissing the plaintiff's complaint brought pursuant to §§ 9-328 and 9-371b is reversed and the case is remanded to the trial court for further proceedings according to law." We stated at the time that this written opinion would follow.

On appeal, the plaintiff claims that the trial court incorrectly concluded that the defendant's application of the bare majority charter revisions to determine the results of the town council election was not a "ruling of an election official." Relying heavily on *Whitnum Baker* v. *Secretary of the State*, 350 Conn. 753, 326 A.3d 235 (2024) (three judge panel pursuant to General Statutes § 9-323),[5] and *Caruso* v. *Bridgeport*, 285 Conn. 618, 941

of the Superior Court," we have often exercised our discretion to treat appeals from a final judgement in which the parties and the trial court have not made use of the procedure described in § 9-325 as if they had been filed in the Appellate Court and transferred to this court under § 51-199 (c) and Practice Book § 65-1. See, e.g., *Airey* v. *Feliciano*, 350 Conn. 162, 168 n.4, 323 A.3d 1037 (2024); *Caruso* v. *Bridgeport*, 285 Conn. 618, 622 n.3, 941 A.2d 266 (2008); *Bortner* v. *Woodbridge,* 250 Conn. 241, 245 n.4, 736 A.2d 104 (1999). We did the same in this present appeal, including complying with the requirement in § 9-325 that we hear the appeal within fifteen days, regardless of the length or complexity of the trial court proceedings under review.

We continue to "invite the legislature to clarify whether the 1978 amendments to § 9-325 . . . authorize direct appeals to this court outside of the certified question process." (Citation omitted.) *Airey* v. *Feliciano*, supra, 350 Conn. 168 n.4; see also *Wrinn* v. *Dunleavy*, 186 Conn. 125, 134 n.10, 440 A.2d 261 (1982). We also caution the bench and bar that our use of this procedure to expedite election contest appeals taken without compliance with § 9-325 is wholly discretionary.

[5] Section 9-323 differs from the other election contest statutes because it gives judges of this court original jurisdiction over questions of fact and law in disputes arising from the elections of presidential electors, United States senators, and United States representatives. See, e.g., *In re Election of the United States Representative for the Second Congressional District*, 231 Conn. 602, 608 n.5, 653 A.2d 79 (1994). Under § 9-323, one judge of this court hears a federal election contest when the proceeding is brought "prior to such election," with "complaints made subsequent to the election . . . decided by a panel of three judges." (Internal quotation marks omitted.) *Whitnum Baker* v. *Secretary of the State*, supra, 350 Conn. 755 n.1. Because § 9-323 does not provide for en banc or panel review of the decision of the assigned

A.2d 266 (2008), the plaintiff contends that the defendant necessarily interpreted the charter and the effective date of its revisions in executing her responsibility under General Statutes § 9-320 (a) to determine who had been elected to town office and to inform the secretary of the state accordingly. The plaintiff emphasizes the selective nature of the defendant's decision, which implemented the bare majority charter revisions, but not the position elimination aspect of the charter revisions, and posits that, "as an election official, [the defendant] made a ruling that decided a question presented to the official, namely, in what order do the results of the election come into effect?"[6] We agree with the plaintiff.

The jurisdictional issue in this case is whether the plaintiff was statutorily aggrieved by a "ruling of [an] election official" under §§ 9-328 and 9-371b. See, e.g., *Arciniega* v. *Feliciano*, 329 Conn. 293, 301–302, 184 A.3d 1202 (2018). Aggrievement implicates the plaintiff's standing and the court's subject matter jurisdiction; e.g., id., 300–301; and our review of the trial court's ruling on the defendant's motion to dismiss is plenary. See, e.g., *Manginelli* v. *Regency House of Wallingford, Inc.*, 347 Conn. 581, 591, 298 A.3d 263 (2023).

Under § 9-328, "[a]ny elector or candidate claiming to have been aggrieved by *any ruling of any election official in connection with an election for any municipal office . . .* may bring a complaint to any judge of the Superior Court for relief therefrom." (Emphasis added.) Section 9-371b is similarly worded and provides an expedited remedy

judge or judges; see *Fay* v. *Merrill*, 336 Conn. 432, 442 n.14, 246 A.3d 970 (2020) (*Robinson, C. J.*) (assigned pursuant to § 9-323); decisions of one or three Supreme Court judges acting pursuant to that statute are not binding precedent with respect to this court and thus constitute only persuasive authority.

[6] The plaintiff also asserts that this ruling was effectively "a mistake in the count of votes cast for any [municipal] office," as contemplated by § 9-328, and that, under *Bortner* v. *Woodbridge,* 250 Conn. 241, 269, 736 A.2d 104 (1999), "[a]n election official's mistake in the count of the vote [confers] jurisdiction [on] the court in addition to and independently from an allegation of an aggrievement by the ruling of an election official." Given our conclusion that the defendant's determination was a ruling of an election official, we need not address these arguments.

to "[a]ny person . . . claiming to have been aggrieved by any ruling of any election official in connection with a referendum . . . ."

A significant body of case law has explained the meaning of the phrase "ruling of any election official" under the various election contest statutes and has given it the same meaning across the scheme. See, e.g., *Airey* v. *Feliciano*, 352 Conn. 639, 650–51, 338 A.3d 344 (2025); *Arciniega* v. *Feliciano*, supra, 329 Conn. 302–303; *Caruso* v. *Bridgeport*, supra, 285 Conn. 646–47; cf. General Statutes § 9-323 (federal elections); General Statutes § 9-324 (elections of state officers and probate judges); General Statutes § 9-328 (municipal elections); General Statutes § 9-329a (primaries); General Statutes § 9-371b (referenda).

The first comprehensive interpretation of the phrase "ruling of an election official" was provided in *Bortner* v. *Woodbridge,* 250 Conn. 241, 736 A.2d 104 (1999), which arose under § 9-328. This court observed that it is not a defined phrase under the election statutes and that none "of the legislative history . . . give[s] any indication that it was intended to have some specialized meaning." Id., 267. Thus, this court "presume[d] . . . that the legislature intended it to have its ordinary meaning in the English language, as gleaned from the context of its use." Id.; see also *Caruso* v. *Bridgeport*, supra, 285 Conn. 638–46 (engaging in full statutory analysis of phrase as used in § 9-329a).

Bearing in mind that "[s]tatutory provisions governing election contests are strictly construed"; *Caruso* v. *Bridgeport*, supra, 285 Conn. 639; it is well established under *Bortner* and *Caruso* that "[a] ruling of an election official must involve some act or conduct by the official that (1) decides a question presented to the official, or (2) interprets some statute, regulation or other authoritative legal requirement, *applicable to the election process*. . . . This court's prior review of the text, genealogy, and legislative history of [election] statute[s] has revealed that *this test is not intended to*

*have a narrow, technical meaning.* . . . Instead, [t]his test is broad enough to include conduct that comes within the scope of a mandatory statute governing the election process, even if the election official has not issued a ruling in any formal sense. When an election statute mandates certain procedures, and the election official has failed to apply or to follow those procedures, such conduct implicitly constitutes an incorrect interpretation of the requirements of the statute and, therefore, is a ruling. . . . Conversely, the court will not find a party aggrieved by a ruling when the ruling is made in conformity with the law." (Citations omitted; emphasis added; internal quotation marks omitted.) *Arciniega* v. *Feliciano*, supra, 329 Conn. 302–303; see also *Airey* v. *Feliciano*, supra, 352 Conn. 650–51 (reaffirming "imputed knowledge doctrine").

Under these principles, an election official has made a ruling when asked to act, even in the absence of a mandatory statutory duty to do so, but has not made a ruling if the official lacks the authority to perform the act desired by the otherwise aggrieved plaintiff. See, e.g., *Arciniega* v. *Feliciano*, supra, 329 Conn. 304–305, 309–10; see also *Strong* v. *Toth*, Superior Court, judicial district of Fairfield, Docket No. CV-93-0309146-S (December 10, 1993) (10 Conn. L. Rptr. 533, 535) (certification of election results was not ruling in challenge to residency of successful candidates because neither town clerk nor chief election moderator "had any authority or obligation to determine the residency of any candidates or to alter the election results in the event certain candidates were determined [not to] be residents of the district from which they were elected").

The election contest statutes also "may not be used to challenge the underlying election laws and merely [consider] whether the election official's ruling complied with those laws . . . ." (Citations omitted.) *Whitnum Baker* v. *Secretary of the State*, supra, 350 Conn. 762; see *Scheyd* v. *Bezrucik,* 205 Conn. 495, 502–503, 535 A.2d 793 (1987). In *Fay* v. *Merrill*, 336 Conn. 432, 246

A.3d 970 (2020), then Chief Justice Robinson, assigned pursuant to § 9-323, set forth an illustrative comparison. He concluded that the election contest statutes "do not confer jurisdiction over . . . fundamental constitutional challenges to [an executive order expanding absentee voting], which the [secretary of the state]—acting as an elections official—implemented via [a ballot] application" but, in dictum, noted that the statutes would have "conferred jurisdiction . . . over [a] claim that the application is not itself faithful to [an executive order]." Id., 450 n.19. Similarly, in *Wrotnowski* v. *Bysiewicz*, 289 Conn. 522, 958 A.2d 709 (2008), then Chief Justice Rogers, assigned pursuant to § 9-323, concluded that there was no ruling when the plaintiff "claim[ed] only that the existing election laws governing presidential elections are not adequate to ensure compliance with article two, § 1, of the federal constitution." Id., 528; see id., 529. She emphasized that "the election statutes neither require nor authorize the [secretary of the state] to verify the constitutional qualifications of a candidate for the office of president of the United States." Id., 528.

An election official's claimed adherence to the law will not, without more, defeat jurisdiction under the election contest statutes when "the gravamen" of the plaintiff's claim is the misapplication of a law. *Whitnum Baker* v. *Secretary of the State*, supra, 350 Conn. 762. Thus, in *Whitnum Baker*, a panel of three judges of this court, *McDonald*, *Alexander,* and *Dannehy*, *Js.*, exercised jurisdiction over a write-in candidate's claim that the secretary of the state had misapplied the law by erroneously communicating information about General Statutes (Supp. 2024) § 9-373a, and then refusing to accept her untimely candidate registration form that resulted from that error under § 9-323. Id., 762–63.

Applying these principles, we conclude that the defendant's decision to apply the newly approved charter revisions, rather than the provisions of the charter that purportedly were in effect on the day of the municipal election, to determine the composition of the town

council from that same election was a ruling of an election official. Contrary to the defendant's arguments in this appeal, the fact that the decision was made subsequent to balloting and ballot tabulation does not remove it from the election process and render it solely a decision of a governmental organization under General Statutes § 7-193 (a).[7] Instead, the decision required the defendant to apply two of the statutory dictates codified in title 9 of the General Statutes, which strongly suggests that they are electoral in nature. See *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 729–31, 295 A.3d 889 (2023). Subsection (c) of General Statutes § 9-167a, the minority representation statute, directed the defendant to determine "the winner or winners" of the town council election by deeming elected only those candidates from the majority party, in this case the Democratic Party, up to the maximum number allotted by subsection (a) of that statute or the town charter, as permitted by subsection (e), before turning to "[t]he next highest ranking candidates" to fill the remainder of the seats.[8] Section 9-320 (a) then required the defendant, "within ten days

[7] Section 7-193 (a) is part of the Home Rule Act (act), General Statutes § 7-187 et seq., which empowers "municipalities . . . to adopt a charter to serve as the organic law of that municipality. . . . It is well established that a [town's] charter is the fountainhead of municipal powers. . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 529, 662 A.2d 1281 (1995); see, e.g., *Cook-Littman* v. *Board of Selectmen*, 328 Conn. 758, 768–69, 184 A.3d 253 (2018) (discussing purpose of charters and home rule legislation). "The act requires charters to conform to certain standards"; *Windham Taxpayers Assn.* v. *Board of Selectmen*, supra, 530; with § 7-193 (a) requiring municipalities to have both a "legislative body" and a "chief executive officer." General Statutes § 7-193 (a) (1) and (2). With respect to "any elective legislative body," such as a town council, the charter must prescribe (1) "[t]he number of members," (2) "the terms of office of such members," and (3) "the method by which they are elected . . . ." General Statutes § 7-193 (a) (1).

[8] As the defendant acknowledges, and as was discussed at oral argument before this court, several decisions of this court have considered minority representation disputes brought under § 9-328, albeit without expressly addressing the jurisdictional question raised in this case. See *Putala* v. *DePaolo*, 225 Conn. 378, 623 A.2d 989 (1993); *Lobsenz*

after the municipal election," to "return to the Secretary of the State a statement of the name, post-office address and term of each person elected to office in such election." In deciding that the bare majority charter revisions were applicable, the defendant necessarily interpreted the charter with respect to the effective date of the revisions, which directly affected whether the results that the defendant determined and reported under §§ 9-167a (c) and 9-320 (a), respectively,[9] were correct. Resolving a question about the applicability of a charter provision to the municipal officers elected simultaneously with its approval is within the purpose of the election contest statutes, which is to ensure the accuracy of the election results and "that the will of the people is carried out." *Bortner* v. *Woodbridge*, supra, 250 Conn. 254. The defendant's decision to apply the newly approved bare majority charter revisions went to the question that every candidate and voter wants answered: *Who won?*

We disagree with the defendant that our reasoning in *Scheyd* v. *Bezrucik*, supra, 205 Conn. 495, supports her argument that the plaintiff's claims are not cognizable under §§ 9-328 and 9-371b because they are constitutional in nature. *Scheyd*, which this court decided prior to its more comprehensive analyses of the phrase "ruling of an election official" in *Bortner* and *Caruso*, held that

v. *Davidoff*, 182 Conn. 111, 438 A.2d 21 (1980); *Anderson* v. *Ludgin*, 175 Conn. 545, 400 A.2d 712 (1978).

Nevertheless, in *Bortner* v. *Woodbridge,* supra, 250 Conn. 241, this court cited *Lobsenz* for the proposition that the application of § 9-167a to the vote totals by an election moderator for purposes of determining the winner of the election constituted a ruling by that official under § 9-328. Id., 270. Although the court in *Lobsenz* considered the scope of the trial court's authority under § 9-328 to resolve the dispute without ordering new elections, it did not consider whether the determination was a ruling under that statute. See *Lobsenz* v. *Davidoff*, supra, 182 Conn. 116–17.

[9] We understand the plaintiff's claims in the present case to be grounded in the defendant's decision to apply the charter revisions selectively to the town council, but not the treasurer and selectmen positions, in determining the results of the election. The alleged selective application is not determinative of whether the defendant's decision regarding the town council election is a ruling of an election official.

a constitutional challenge to General Statutes (Rev. to 1987) § 9-167a, as amended by Public Acts 1987, No. 87-498, was not "within the jurisdictional confines of . . . § 9-328, which, under narrowly defined circumstances, provides expedited judicial procedures for the resolution of election disputes." (Footnote omitted.) Id., 496–97; see id., 505, 507. Quoting a footnote in *Wrinn* v. *Dunleavy*, 186 Conn. 125, 134 n.10, 440 A.2d 261 (1982), this court stated that a complaint brought under the election contest statutes "must concern a ruling of an election official or a mistake in the count of votes. . . . A plaintiff may not use these [statutes] to challenge a law or regulation under which the election or primary election is held by claiming aggrievement in the election official's obedience to the law. In such a case the plaintiff may well be aggrieved by the law or regulation, but he or she is not aggrieved by the election official's rulings [that] are in conformity with the law." (Citation omitted; internal quotation marks omitted.) *Scheyd* v. *Bezrucik,* supra, 503. This court held that, because the petitioners in *Scheyd* had not alleged "a violation of one of the statutes specially referenced in § 9-328 [or] . . . that the town clerk made a 'mistake' in the vote count"; id., 502; they were not aggrieved by a ruling of an election official. Id., 505. This court rejected their policy based request "to reconsider the merits of our footnote in *Wrinn*"; id.; observing that "[t]he legislature might reasonably have opted for speedy adjudication of disputes about technical violations of election laws on the theory that identification and rectification of such mistakes [are] ordinarily not . . . matter[s] of great complexity. Constitutional adjudication, by contrast, requires study and reflection and may therefore, as a general matter, be deemed less appropriate for accelerated disposition." Id., 505–506; see also id., 506 (relying on legislative acquiescence given amendments to statutory scheme but not to § 9-328 subsequent to *Wrinn*).

Although it might appear that this court's rationale in *Scheyd* could apply to the present case, we conclude that it does not control the outcome here. First, unlike in

*Scheyd*, the operative complaint here asserts a nonconstitutional claim of error, namely, that it was "clearly erroneous and improper" to apply the newly approved charter revisions in determining the winners of the election, rather than applying the provisions that were in effect when the ballot was printed and the votes cast. Second, *Scheyd* is not as expansive as the defendant argues. *Scheyd*, by its own terms, is limited to structural or facial challenges to election laws. It does not preclude challenges to an election official's application of "statute[s], regulation[s] or other authoritative legal requirement[s] . . . applicable to the election process"; (internal quotation marks omitted) *Arciniega* v. *Feliciano*, supra, 329 Conn. 302; in specific cases, even if the effect of the challenged decisions might well result in a harm that is constitutional in nature. We therefore conclude that the trial court improperly dismissed the plaintiff's action for lack of subject matter jurisdiction.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.