CAMILLE BASTON ET AL. *v.* LEO RICCI ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued December 14, 1977—decision released April 4, 1978

*Karl Fleischmann,* for the appellants (named plaintiff et al.).

*Martin A. Gould,* for the appellants (plaintiffs Mary Rickard et al.).

*Morton H. Greenblatt,* assistant corporation counsel, with whom were *Thomas N. Sullivan* and *William R. Connon,* for the appellees (defendants).

House, C. J. This case is another of the many arising from the long-continuing problem of providing local education under a system in which the local boards of education are charged with the duty of maintaining good public elementary and secondary schools (General Statutes § 10-220) but are dependent for the funds necessary to perform this duty upon the appropriation of funds by the municipalities or one of their boards. The almost inevitable conflict is apparent in the number of cases

which have come before this court for adjudication. See, inter alia, *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 294 A.2d 546, and cases therein cited; *Board of Education* v. *Ellington,* 151 Conn. 1, 193 A.2d 466; *Fowler* v. *Enfield,* 138 Conn. 521, 86 A.2d 662; *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 16 A.2d 601; *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 160 A. 902. The present controversy has its roots in this dichotomy. The facts are not in dispute and no error has been assigned to the court's finding of fact.

Each of the plaintiffs was a nontenured teacher employed by the Meriden board of education during the 1975-1976 school year. In June, 1976, the employment of each of them was terminated by the board, acting pursuant to the authority granted by § 10-151 (b), because of the elimination of the position which the teacher had held. They brought the present action claiming damages and that a writ of mandamus "and/or mandatory injunction issue to the Meriden board of apportionment and taxation requiring the appropriation of funds sufficient to permit their rehiring" and that a similar writ or injunction issue to the Meriden board of education requiring that the board reverse the terminations and rehire them.

On April 16, 1976, the board of education had entered into a contract with the Meriden federation of teachers, the teachers' bargaining unit as defined in § 10-153b (a) (2) of the General Statutes. All of the plaintiffs were members of that unit. On April 19, 1976, this contract was approved by the Meriden court of common council pursuant to the

provisions of § 10-153d.[1]  Subsequently, the board of education transmitted to the city board of apportionment and taxation (hereinafter referred to as the tax board) the information that the cost of funding the contract for the fiscal year July 1, 1976, through June 30, 1977, was $497,485 in excess of the amounts included in the budget which it had submitted to the tax board in January, 1976, when it had requested an appropriation of $13,463,929. The $497,485 increase was computed by the board of education during the negotiations for the contract, based upon a teaching staff of 591, which would include the plaintiffs.  On April 30, 1976, the tax board informed the board of education that it had approved a total budget of $12,617,133, which reflected a cut of $1,344,281 from the board of education's requested budget as adjusted to reflect the additional costs necessitated by the contract with the teachers.  In transmitting its approved budget of $12,617,133 to the board of education, the tax board indicated that it had included an amount of $500,000 to allow for the additional $497,000 in the teachers' salary account as a result of the negotiated contract and this $500,000 was included in the budgeted item of $8,014,310 for teachers' salaries and other benefits.  This $8,014,310, however, was $292,070 less than what would be required for the

---

[1] General Statutes § 10-153d, as amended by 1973 Public Acts, No. 73-391, provided for collective bargaining between boards of education and their professional employees with respect to salaries and other conditions of employment, that a copy of any contract between the parties be filed with the town clerk, that the terms of that contract shall be binding on the legislative body of the town unless that body rejects the contract within thirty days of the filing. It also provided, in part, that "[t]he body charged with making annual appropriations in any school district shall appropriate to the board of education whatever funds are required to implement the terms of any contract not rejected pursuant to this section."

board of education to pay the salaries and other benefits for 591 teachers at the rate called for by the contract. Recognizing this fact, the tax board recommended to the board of education that it make up the deficiency in part by the elimination of some teacher positions through attrition and layoffs which, as recommended, would amount to $328,130.

On May 18, 1976, the board of education approved a revised budget which remained within the $12,617,133 appropriated. The board worked for approximately eighteen days, literally going over every line item in the whole budget, cutting the items for maintenance, tuition and transportation before deciding that they were forced to reduce the total teachers' salary item by $292,070 because, they concluded, there was no other item in the budget which could be further cut. The employment of each of the plaintiffs was, accordingly, terminated as a consequence of the board's decision that it was the best way to achieve the $292,070 reduction.

Of decisive significance in the present case are two unattacked findings of the trial court. One is that in its deliberations prior to arriving at a total budget figure for the board of education the tax board reviewed all of the line items in the proposed education budget and "[i]n establishing its recommendations for line item 7 [the teachers' salary account] it suggested and took into account an amount of $500,000 to allow for the additional cost of $497,000 to the teachers' account as a result of the negotiated contract in question." The other and even more significant unattacked finding is that "[t]he decision to reduce teaching staff, though necessitated by the amount allocated to the budget of the board of education by the board of appor-

tionment and taxation, was made solely by the Meriden board of education in the exercise of its discretion."

On the basis of its finding of facts, the trial court concluded that § 10-153d of the General Statutes requires an appropriation of funds only for what is made mandatory by the terms of the contract; that the statute does not require a board of finance or tax board to appropriate funds for a minimum number of teacher positions unless this is provided for by the terms of the contract; that absent a contract provision which guarantees employment for all teachers who were employed as of the date the contract was entered into, a board of finance or tax board is required to provide sufficient funds to pay the salaries and other benefits provided by the contract only for those teachers who are employed; and that the board of apportionment and taxation appropriated to the board of education whatever funds were required to implement the terms of the contract approved by the Court of Common Council of the city of Meriden.

The plaintiffs have attacked those conclusions of the court and have assigned as error the court's overruling of their contrary claims of law. It is their position that the legislative history of § 10-153d indicates that the legislature intended to deny the appropriating authority any discretion respecting the funding of teacher contracts and intended to place such discretion solely with the town legislative body and, accordingly, the court was required to interpret the statute to invalidate the appropriation of the Meriden tax board.

We find no error in the conclusions of the trial court. Conclusions are tested by the subordinate

facts found and, if logically supported by the finding, they must stand. *Perley* v. *Glastonbury Bank & Trust Co.*, 170 Conn. 691, 697, 368 A.2d 149; *Connecticut Coke Co.* v. *New Haven*, 169 Conn. 663, 675, 364 A.2d 178; *Weingarten* v. *Allstate Ins. Co.*, 169 Conn. 502, 504, 363 A.2d 1055. As we have noted, the plaintiffs have not attacked the court's finding of facts and they fully support its conclusions.

As the court found, the decision to reduce the teaching staff "was made solely by the Meriden board of education in the exercise of its discretion." What cuts in the budget would be made was solely the responsibility of the board of education. General Statutes §§ 10-220, 10-222. "The clear intendment of § 10-222, when read in connection with § 10-220, is that all appropriations for school purposes shall be made to the board of education to be expended by that board. The number of teaching positions necessary in the public schools, the need for a curriculum coordinator, and the maintenance of school properties are matters within the sound discretion of the board of education under General Statutes § 10-220." *Board of Education* v. *Ellington*, 151 Conn. 1, 9, 193 A.2d 466.

The language of § 10-153d is clear and unambiguous. The plaintiffs would have us read into it by construction a meaning not apparent in its language but which they contend was intended by the legislature. This we will not do. We are confined to the intention which is expressed in the words which the legislature has used. *Madison Education Assn.* v. *Madison*, 174 Conn. 189, 192, 384 A.2d 361. The General Assembly has clearly provided that once a board of education and a teachers' collective bargaining unit have

reached a collective bargaining agreement and the agreement has not been rejected by the town's legislative body, all of the terms of the agreement become binding upon the town. We find nothing in the legislative enactment which goes beyond this. We find nothing in the legislation which, in the absence of an express provision in the contract, would guarantee teacher job security and which by implication repeals the provisions of § 10-151 (b) (5) of the General Statutes, which specifically provides that a board of education may terminate a teacher's contract at any time because of the elimination of the position to which the teacher was appointed if no other position exists for which the teacher is qualified.

Our conclusion that the trial court correctly decided that there was no violation of the provisions of § 10-153d is decisive of the merits of the plaintiffs' appeal and we have no need to consider the further questions as to whether or not the plaintiffs would, in any event, be entitled to the extraordinary remedies of mandamus or injunctive relief.

There is no error.

In this opinion the other judges concurred.