THOMAS VERDON, ADMINISTRATOR *v.* TRANSAMERICA INSURANCE COMPANY

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued March 10—decision released June 15, 1982

*Michael Perzin,* with whom, were *John J. Resnik* and, on the brief, *Ivan M. Katz,* for the appellant (plaintiff).

*John W. Lemega,* with whom, on the brief, were *Thomas J. Hagarty* and *Mark B. Seiger,* for the appellee (defendant).

SHEA, J.   This appeal raises the issue of whether a decrease in the value of an estate caused by legal malpractice is "damage to the property of any person" for purposes of General Statutes § 38-175,[1] the so-called "direct action" statute.   The plaintiff recovered a judgment for the diminution of the estate of Alma Bouffard in a negligence action brought against the attorney for the estate.   The judgment not having been satisfied, the plaintiff brought this action directly against the defendant Transamerica Insurance Company, the judgment debtor's malpractice insurer.   Transamerica moved to strike the complaint on the ground that it failed to state a cause of action under General Statutes § 38-175.   The court granted the motion to strike the entire complaint and, pursuant to Practice Book § 157, rendered judgment for the defendant upon

[1] "[General Statutes] Sec. 38-175.   LIABILITY OF INSURER UNDER LIABILITY POLICY.   Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty.   No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.   Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

motion after the plaintiff failed to replead. See *Kilbride* v. *Dushkin Publishing Group, Inc.,* 186 Conn. 718, 443 A.2d 922 (1982); *Breen* v. *Phelps,* 186 Conn. 86, 439 A.2d 1066 (1982). The plaintiff has appealed from this judgment.

In reviewing a ruling on a motion to strike, we must construe the allegations of the complaint most favorably to the plaintiff. See *Senior* v. *Hope,* 156 Conn. 92, 97–98, 239 A.2d 486 (1968). In his amended complaint the plaintiff alleged that (1) he had recovered a judgment against the attorney for the estate for "damages to property" arising out of the attorney's carelessness;[2] (2) the defendant Transamerica was the attorney's insurer at the time the losses were suffered; (3) the judgment had not been satisfied; and (4) the plaintiff is subrogated to the judgment debtor's rights against Transamerica under General Statutes § 38-175. Although a motion to strike admits facts well pleaded; *State* v. *LeSelva,* 163 Conn. 229, 231, 303 A.2d 721 (1972); it does not admit legal conclusions. *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 157 Conn. 587, 588, 248 A.2d 927 (1968). The plaintiff's allegation that the direct action statute's subrogation provision is applicable can, therefore, be disregarded for the purpose of a motion to strike.

The defendant argues, and the trial court agreed, that the financial loss suffered by the plaintiff, as administrator of the estate of Alma Bouffard, is not "damage to property" as contemplated by the direct action statute. The court based its construction of General Statutes § 38-175 primarily on the use of

---

[2] The complaint does not disclose the specific acts of negligence which were relied upon in the underlying action against the attorney.

the word "casualty" in the statute. "Chapter 681 of the Connecticut General Statutes, within which is contained General Statutes Sec. 38-175, is entitled 'Casualty Insurance . . . .' Black's Law Dictionary p. 275 (4th ed. 1968), defines a 'casualty' as an 'accident;' event due to sudden, unexpected, or unusual cause . . . A loss . . . by fire, shipwreck, lightning, etc.' " The implication of this statement in the memorandum of decision is that the loss of value of an estate due to negligence is not such a casualty and § 38-175 does not encompass mere monetary loss as suffered in this case.

Our construction of the direct action statute, however, yields a different result. As is true in every case involving the construction of a statute, our starting point must be the language employed by the legislature. See *Reiter* v. *Sonotone Corporation,* 442 U.S. 330, 337, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979); *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978). General Statutes § 38-175 provides in relevant part: "Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or *damage to the property of any person,* for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death *occasioned by such casualty."* (Emphasis added.) "In its dictionary definitions and in common usage 'property' comprehends anything of material value owned or possessed. See, e.g., Webster's Third New International Dictionary 1818 (1961). Money, of course,

is a form of property." *Reiter* v. *Sonotone Corporation,* supra, 338.[3] "A consumer whose money has been diminished by reason of an antitrust violation has been injured in his . . . property . . . ." *Reiter* v. *Sonotone Corporation,* supra, 339. Although this is our first opportunity to construe the word "property" in General Statutes § 38-175, we have on several occasions discussed its meaning in other contexts. In *Winslow* v. *Zoning Board,* 143 Conn. 381, 386, 122 A.2d 789 (1956), we were called upon to decide whether the phrase "any Stamford property owner" in 26 Spec. Law 1236, No. 619, § 553.1 was restricted to owners of real property. We said: "The word 'property' is defined as '[t]hat to which a person has a legal title.' . . . It may include everything which is the subject of ownership." Id., 386–87. And in the taxation context, we stated that "[t]he word 'property' . . . refers to every species of valuable right or interest which is subject to ownership, or that which has an exchangeable value or which goes to make up one's wealth or estate . . . ." *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 131–32, 355 A.2d 236 (1974).

The defendant focuses on the phrase "such casualty" as narrowing the meaning of "damage to the property of any person" so as to exclude mere monetary damage. Of course, the use of "such" to modify "casualty" indicates an allusion to the preceding language "bodily injury or death by accident

---

[3] In *Reiter* v. *Sonotone Corporation,* 442 U.S. 330, 337, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979), the United States Supreme Court held that the language of § 4 of the Clayton Antitrust Act, "[a]ny person . . . injured in his business or property," was broad enough to include a consumer who paid an artifically inflated price for a hearing aid due to price fixing by several hearing aid manufacturers.

of any person, or damage to the property of any person . . . ." These occurrences are referred to indiscriminately by the term "such casualty." "Casualty," like property, must be construed according to its "commonly approved usage." General Statutes § 1-1 (a). The standard definition appropriate to the context of this case is "an unfortunate occurrence" synonymous with "mischance." Webster, Third New International Dictionary. The trial court relied upon a more restrictive definition: an "[a]ccident; event due to sudden, unexpected, or unusual cause . . . ." Black's Law Dictionary (4th Ed. Rev.) Even under this narrower definition, the trial court's view that damage to the net worth of an estate resulting from an attorney's negligence is not such an occurrence is erroneous. We must assume that the loss was accidental since the former action sounded in negligence rather than fraud. Although "sudden" may also imply quickness, its primary meaning is unexpected, "happening without previous notice or very brief notice." Webster, Third New International Dictionary. The complaint may fairly be construed as alleging that the loss resulted from a sudden, unexpected *or* unusual cause, to wit, the attorney's negligence. Our interpretation of the word "casualty" is, of course, limited to its significance as used in § 38-175. We recognize that in other contexts it may have a more restricted connotation.

There is no recorded legislative history[4] which militates against the broad construction dictated

---

[4] The only historical evidence of legislative intent is the statement of purpose which prefaced the bill when introduced in the Senate in 1919: " 'An Act relative to the addition of an Insurer as Party Defendant in an Action,' providing for the joining of insured and insurer as defendants in civil actions." Public Acts 1919, ch. 331.

by the common usage of the language of the act. This court, however, has previously postulated in other contexts that the legislature's purpose in enacting the "direct action" statute was to remedy "[t]he unfairness to the assured of contracts of insurance" with provisions that the insurer should be liable only in cases where the assured had actually paid a judgment obtained against him. *Guerin* v. *Indemnity Ins. Co.*, 107 Conn. 649, 652, 142 A. 268 (1928). "The intention of the Act is to give the injured person the same rights under the policy as the assured . . . ." Id., 653. Although the statute has been invoked almost exclusively in the context of motor vehicle negligence situations involving personal injuries and damage to tangible property, nothing in the statement of purpose of the act or any of our decisions so limits its scope. See *Connecticut Wholesale Drug Co.* v. *New England Fire Ins. Co.*, 121 Conn. 514, 516–17, 186 A. 551 (1936). We note that chapter 682a of the General Statutes, entitled "CASUALTY INSURANCE RATES," is made applicable to "all insurance on risks or on operations in this state" except for five categories of insurance specifically exempted from such rate regulation. General Statutes § 38-201b.[5] It cannot be questioned that malpractice insurance rates are included in the casualty insurance rates to which chapter 682a applies. It is reasonable to infer from this usage of the word "casualty" in the insurance context that

---

[5] "[General Statutes] Sec. 38-201b. INSURANCE EXCEPTED FROM REGULATION. The provisions of sections 38-201a to 38-201s, inclusive, shall apply to all insurance on risks or on operations in this state, except: (1) Reinsurance, other than joint reinsurance to the extent stated in section 38-201*l*; (2) life insurance; (3) accident and health insurance; (4) insurance of vessels or craft, their cargoes, marine builders' risks, marine protection and indemmity, or other risks commonly insured under marine, as distinguished from inland marine, insurance policies. Inland marine insurance shall be deemed

the same broad import of the word was intended by the legislature in using the phrase "loss . . . occasioned by such casualty" in § 38-175.

Nor can we ascertain any consideration of policy which would justify authorization of a direct action by a judgment creditor against his debtor's insurer in cases where the property damaged is tangible but not where the property involved is intangible. The insured loss is no less real to the injured party if it is a decrease in his assets than if it is an equivalent amount of damage to his car. The defendant would have us read into § 38-175 by construction a meaning not apparent from its language and not consistent with any reasonable public policy. " 'It clearly is incumbent upon any litigant desiring to limit the general and inclusive import of [a] word to show something in the context of the statute or some general course of interpretation in like matters, sufficient logically to justify a restriction . . . .' " *General Realty Improvement Co.* v. *New Haven,* 133 Conn. 241, 50 A.2d 59 (1946). The defendant has not met this burden with respect to the word "property."

We are not unmindful that in certain areas of the law a distinction has been made between the right to recover for physical injury to property and for other economic loss. In the field of product liability many authorities have refused to extend strict tort

to include insurance defined on or after July 1, 1969, by statute, or by interpretation thereof, or if not so defined or interpreted, by ruling of the insurance commissioner or as established by general custom of the business, as inland marine insurance; (5) insurance against loss of or damage to aircraft, insurance of hulls of aircraft, including their accessories and equipment, or insurance against liability, other than workers' compensation and employers' liability, arising out of the ownership, maintenance or use of aircraft."

liability to cover economic loss. See, e.g., *Fredonia Broadcasting Corporation* v. *RCA Corporation*, 481 F.2d 781, 797 (5th Cir. 1973); *Southwest Forest Industries, Inc.* v. *Westinghouse Electric Corporation*, 422 F.2d 1013, 1020 (9th Cir.), cert. denied, 400 U.S. 902, 91 S. Ct. 138, 27 L. Ed. 2d 138 (1970); *Seely* v. *White Motor Co.*, 63 Cal. 2d 9, 18, 403 P.2d 145 (1965); *Hügel* v. *General Motors Corporation*, 544 P.2d 983, 989 (Colo. 1975); *Hawkins Construction Co.* v. *Matthews Co.*, 190 Neb. 546, 561–62, 209 N.W.2d 643 (1973); *Price* v. *Gatlin*, 241 Or. 315, 318, 405 P.2d 502 (1965); *Signal Oil & Gas* v. *Universal Oil Products*, 572 S.W.2d 320, 325 (Tex. 1978); 2 Restatement (Second), Torts § 402A; Prosser, Torts (4th Ed. 1971) § 101; White & Summers, Uniform Commercial Code (2d Ed. 1980) § 11-4. A contrary view that strict liability should apply to economic loss also has attracted a following. See, e.g., *Santor* v. *A & M Karagheusian, Inc.*, 44 N.J. 52, 66–67, 207 A.2d 305 (1965); *Kassab* v. *Central Soya*, 432 Pa. 217, 231 n.7, 246 A.2d 848 (1968); *Air Products & Chemicals, Inc.* v. *Fairbanks Morse, Inc.*, 58 Wis. 2d 193, 219, 206 N.W.2d 414 (1973). In adopting the rule of § 402A of the Restatement (Second) of Torts as the basis for product liability claims in this state prior to the adoption of our current legislation, we recognized that an allegation of "physical harm to the consumer or user or to his property" was essential, as the rule provides. *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 562, 227 A.2d 418 (1967); see also *Hoelter* v. *Mohawk Service, Inc.*, 170 Conn. 495, 500, 365 A.2d 1064 (1976); *Garthwait* v. *Burgio*, 153 Conn. 284, 289, 216 A.2d 189 (1965). In 1979 when our unitary product liability statute; Public Acts 1979, No. 79-483; was adopted, the harm

for which relief was provided was defined to include "damage to property, including the product itself, and personal injuries including wrongful death." General Statutes § 52-572m (d). The legislative history of this statute contains a clear indication that the phrase "damage to property" in this definition was intended to encompass economic harm.[6] The effect of this change in our law is to remove the requirement of privity of contract for an action by the person who has sustained an economic loss

---

[6] 22 S. Proc., Pt. 14, 1979 Sess., pp. 4628–29:

"[Senator Santaniello]: It's the intent of this Amendment to make clear in this Bill that economic loss will be an actionable item and I would, thru you Mr. President, at this time, like to ask a question of Senator DePiano.

"The Chair: You may proceed, Senator Santaniello.

"Senator Santaniello: Senator DePiano, I'd ask you if this intent, under the definition of harm, starting on Line 28 of this particular Bill would and is the legislative intent to allow action for economic loss?

"The Chair: Senator DePiano.

"Senator DePiano: Mr. President, thru you to Senator Santaniello, there seems to be no question in my mind that the word harm includes damage to property as it reads in the file copy, including the product itself and personal injuries, including wrongful death and when the term damage is used, that all damages that flow from that particular damage would be compensable including economic loss so, therefore, as long as it's alleged in the complaint that as a result of the damage to the particular piece of property, that economic loss had been suffered, I believe that that's covered by the existing file copy and the Bill that I propose to have this body vote on.

"The Chair: Senator Santaniello.

"Senator Santaniello: Thru you again, Mr. President, one final question of Senator DePiano.

"The Chair: You may proceed.

"Senator Santaniello: Thank you Mr. President. Is it then fair to say that the intent of the legislation to include economic harm?

"The Chair: Senator DePiano.

"Senator DePiano: Thru you Mr. President, the answer is yes and even more broadly, yes in all phases of any damage that's sustained, whether it be personal injuries or property damage, economic loss and all damages stemming from the product defect would be compensible [sic]."

against the manufacturer or seller responsible for that loss. Our construction of the phrase "damage to the property of any person" in § 38-175 coincides with the gloss imparted by the legislative history upon the similar term "damage to property" in § 52-572m (d), and the consequence is similar. In both situations the result of enforcing the privity barrier was to immunize from liability those who had received benefits from an economic transaction for which, as a matter of policy, they might reasonably be held accountable. In both the legislature has now relaxed this barrier without distinction between injury to property and economic loss.

The defendant urges upon us an alternate ground for sustaining the court's ruling striking the complaint, that the plaintiff failed to state a cause of action under § 38-175 since he alleged that he had won a judgment against the attorney rather than a final judgment. This ground was not set forth by the defendant in support of his motion to strike.[7] Nor was it mentioned or relied upon by the trial court in its memorandum of decision. Had the plaintiff been apprised of this alleged defect, he might have chosen to amend his complaint or to replead, if the motion to strike had already been granted. We, therefore, decline to consider the doubtful merit of this belated claim.

---

[7] The defendant's original memorandum of law, filed in support of its motion to strike, attacked the original complaint, which did not mention General Statutes § 38-175, for that omission. After the plaintiff amended his complaint by adding paragraph 4, which alleged his subrogation rights under § 38-175, the defendant submitted two supplemental memoranda in support of the motion to strike. None of the memoranda pointed to the omission of the word "final" as a reason for the complaint's alleged failure to state a cause of action.

There is error, the judgment is set aside and the case is remanded to the Superior Court for further proceedings.

In this opinion the other judges concurred.