[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In a revised complaint dated May 26, 2000, the plaintiff, Lemond Johnson, has filed a product liability claim against Allis Chalmers Corporation (Allis), Tri-Lift, Inc. (Tri-Lift), and Nippon Yusoki Co. LTD. (NYK). Johnson claims that while working as a forklift operator for the Remington Products Corporation he sustained personal injuries following a collision with another fork lift. Johnson's complaint sets forth products liability claims against all defendants as product sellers. Subsequently, by pleading dated June 22, 2000, Tri-Lift filed a four count Amended Third Party Complaint against NYK as follows: in the first count, Tri-Lift seeks indemnification pursuant to C.G.S. §52-577a(b) for any judgment rendered in favor of Johnson; the second count is framed in active/passive negligence; and the third and fourth counts are based on the Uniform Commercial Code. NYK moves to strike Count One of Tri-Lift's Amended Third Party Complaint claiming that the count is legally insufficient because Tri-Lift has failed to allege harm within the meaning of the Product Liability Act (PLA), Connecticut General Statutes § 52-572m, et seq. NYK further claims that in the context of a products liability claim, indemnification is a commercial loss which may be brought only under the Uniform Commercial Code. NYK's Motion to Strike is the subject of this memorandum.
The purpose of a motion to strike is to test the legal sufficiency of the allegations of any complaint to state a claim upon which relief may be granted. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992).
NYK argues that the only harm that Tri-Lift could suffer as a result of the plaintiff's claim is an adverse judgment, and that an adverse judgment is a commercial loss, not within the scope of compensable harm under the PLA. The issue raised by the present motion to strike is CT Page 14785 whether Tri-Lift's risk of having to pay a money judgment falls within the definition of a "harm" compensable under the terms of the PLA. Or, as NYK urges, does this risk constitute a "commercial loss" between product sellers and therefore not within the purview of the PLA.
This issue is the subject of lively and disparate superior court analyses untutored by appellate direction. There are, in essence, two points of view, one holding for a broad definition of "commercial loss" and the other taking a more restrictive view. The latter view finds its antecedence in American Manufacturers Mutual Ins. Co. v. HarringtonHoist, Inc., Superior Court, Judicial District of New Haven at New Haven, Docket No. 26 23 69 (Berdon, J., June 13, 1989) where Judge Berdon held that a commercial loss within the meaning of the PLA had reference to loss of profits or consequential economic losses as opposed to property damage and personal injuries. The broader view of "commercial loss" was articulated in Producto Machine Co. v. Ajax Magnethermic Corp.
Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 23 60 05 (November 10, 1987) where Judge Burns equated commercial loss to "economic injury, whether direct, incidental, or consequential, including property damage and damage to the product itself, incurred by persons regularly engaged in business activities consisting of providing goods or engaged in business activities consisting of providing goods or services in competition."
With this conflict as backdrop, the court's analysis starts with the statutory language. C.G.S § 52-572m defines a product liability claim as including all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. C.G.S. § 52-572n
states, in part: "A product liability claim. . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product . . ." C.G.S. § 575m(d) states as follows: "Harm" includes damage to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, "harm" does not include commercial loss. This section is amplified by § 52-572n(c) which provides that "as between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under the Uniform Commercial Code (UCC), Title 42a."
The PLA provides an exclusive remedy for one harmed as a consequence of a defective product. cf. Burkert v. Petrol Plus or Naugatuck, Inc.,216 Conn. 65 (1990). Additionally, a review of the legislative history of CT Page 14786 the PLA demonstrates that its framers intended that all complaints for injuries based on defective products should be congregated in the PLA. As noted in Winslow v. Lewis-Shepard, Inc.: "Senator Salvatore C. DePiano made the following remarks about the proposed act: `I wouldn't say we would be abolishing all case law, what we're really abolishing is the various causes of action that have been brought in cases which we normally would call products liability cases. For example, the theory of strict liability, warranty, negligence and contract . . . would all be now merged into one cause of action which has been created by statute.'"212 Conn. 462, 469. While this brief reference to the history of the act doesn't answer the present question, it reflects an intent to create process efficiencies as well as substantive rights regarding those harmed by defective products.
The court notes that the subject count was brought pursuant to C.G.S. § 52-577a which states, in part, that:
 "In any such action a product seller may implead any third party who is or may be liable for all or part of the claimant's claim, if such third party defendant is served with the third party complaint within one year from the date the cause of action brought under subsection (a) of this section is returned to court."
Thus, C.G.S. § 52-577a contemplates that a product seller against whom a products liable claim has been made may implead another product seller. To give meaning to this section, one must consider the circumstances in which a product seller would wish to implead another product seller in the chain of distribution or manufacture. A common sense reading of this section suggests that the risk of an adverse monetary judgment is one type of "harm" from which a product seller may seek its protection.
Nowhere in the PLA is the term "commercial loss" defined. Contrary to the urging of the moving party and the persuasion of one line of superior court cases, the court believes it is mistaken to equate "commercial loss" with economic loss. Such a broad construction of the term "commercial loss" could defeat the purposes of the PLA by insulating manufacturers from the full consequences of damages caused by defective products and could make meaningless the impleader section of the statute. The evident intent of this statute is to permit a product seller against whom a product liability action has been brought to implead the product distributor or manufacturer so as to be economically insulated from the consequences of an adverse judgment. If the term "commercial loss" is accorded the broad definition advanced by NYK, the right to implead a product seller would be illusory. The risk of liability is a harm CT Page 14787 contemplated by the statute because it is not a commercial loss caused by the product, but rather caused as a consequence of having been found directly, though not ultimately, responsible to an injured plaintiff.
Having said that not every economic loss is a commercial loss does not end the inquiry. We next move to the question whether an economic loss, such as portended by Tri-Lift can be construed as property damages as contemplated in the PLA. There is decisional support for finding economic loss to be damage to property. In Verdon v. Transamerica Ins. Co., the Supreme Court confronted the issue whether a decrease in the value of an estate caused by legal malpractice was "damage to the property of any person for purposes of General Statutes § 38-175, the so-called direct action statute." 187 Conn. 363 (1982). Writing for the court, Justice Shea opined: "In its dictionary definitions and common usage property comprehends anything of material value owned or possessed. (Internal citations omitted) If Money, of course, is a form of property. A consumer whose money has been diminished by reason of an antitrust violation has been injured in his . . . property . . ." 187 Conn. 367. Thus, in Verdon, the court held that the diminution of a person's estate due to a lawyer's malpractice constituted property damage. So, too, the loss of funds necessary to pay a judgment would be damage to the property of the third party plaintiff.
Further understanding that the exclusion for "commercial loss" does not control the situation at hand can be gleaned by reference to the purpose and scope of the Uniform Commercial Code. The purpose of the UCC is "to simplify, clarify and modernize the law governing commercial transactions." C.G.S. § 42a-1-102 (2)(a). As noted by Judge Jon Blue in his insightful analysis on this topic, the purpose of that portion of the UCC which deals with sales is to apply to transactions in goods. "It is these transactions, the buying and selling of goods, to which the commercial loss statute manifestly applies. When goods are bought and sold, the buyers look to the warranty provisions of the UCC for relief. When a product causes damage to someone who hasn't purchased it, the product liability act is the governing body of law." Hartt v. Schwartz,
Superior Court for the Judicial District of New Haven at New Haven, Docket No. 331912, (Blue, J. December 3, 1997) Thus, in the court's view, the term "commercial loss" is intended to exclude only those losses which are business losses, such as loss of sales, caused in the course of business by a defective product.
Here, Tri-Lift's claim is derivative of its potential liability to Lemond Johnson for his personal injuries. Although the success of Johnson's claim will result in economic loss to Tri-Lift for which Tri-Lift seeks indemnification from NYK, this economic loss stems from a personal injury claim and not from the regular commercial activity of CT Page 14788 providing goods and services for compensation. Although the initial relationship between Tri-Lift and NYK was for the sale of the forklift, the present lawsuit does not arise from the transaction in the sale of goods between the parties but rather from the consequences of an allegedly defective product. As such, litigation arising from damages purportedly caused by the defective product belong within the ambit of the PLA. Accordingly, the motion to strike is denied.
Bishop, J.