[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Zurich Insurance Company as subrogee of Roger Facey d/b/a McDonald's (Zurich), filed an amended complaint on May 20, 2002, alleging in a single count that the defendant, Let There Be Neon City, Inc. (Neon), designed, manufactured and sold a neon sign to the general contractor who was constructing an addition to the restaurant of the plaintiffs insured, Roger Facey d/b/a McDonald's (McDonald's). Zurich alleges that a part of the neon sign overheated, causing a fire in the addition, and that the fire caused great damage to McDonald's premises and property, requiring its insured to expend large sums of money repairing the property and restoring it to its proper condition. The plaintiff alleges further that, for enumerated reasons, the neon sign was sold in a dangerous and defective condition, that it was designed, manufactured and sold improperly, and that the defendant failed to design and manufacture the sign in a way that would prevent overheating. Because of the damage to the property and the premises, Zurich alleges that, as the insurer of the premises, it paid McDonald's for a portion of its losses associated with the fire and subsequent property damage. Under Connecticut's Product Liability Act, General Statutes § 52-572m et seq., Zurich, as subrogee for McDonald's, seeks reimbursement for monies paid to its insured.
On June 4, 2002, the defendant filed a motion to strike the plaintiffs entire amended complaint on the ground that the complaint is legally insufficient because Connecticut's Product Liability Act (the act) precludes recovery for commercial loss between commercial parties, that the parties are commercial parties, and that the damage for which recovery is sought is considered commercial loss under the act.
 DISCUSSION Standard for Motion to Strike
CT Page 14850
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citation omitted; internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357
(1996). "It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Citation omitted; internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 260,765 A.2d 505 (2001). "If a motion to strike is directed to the entire complaint, the motion must fail if any of the plaintiffs claims is legally sufficient." Kovacs v. Kasper, 41 Conn. Sup. 225, 226, 565 A.2d 18
(1989).
 Pertinent Sections of Connecticut's Product Liability Act
In its memorandum in support of its motion to strike, the defendant argues that the plaintiff "seeks to recoup monies paid for property damage, an element not recoverable under the Connecticut Product Liability Act between commercial parties. . . ." (Defendant's Memorandum in Support of Motion to Strike, p. 2.) Under the act, a product liability claim, which "includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions marketing, packaging or labeling of any product . . ."; General Statutes § 52-572m (b); "may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." General Statutes § 52-572n (a). As defined in § 52-572m
(d), "`[h]arm' includes damage to property, including the product itself, and personal injuries, including wrongful death." As amended by the General Assembly in 1984, however, "[a]s between commercial parties, "harm' does not include commercial loss." General Statutes § 52-572m
(d). The statute is clear that "[a]s between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code." General Statutes § 52-572n (c). What is not clear on the face of the statute, and what is at issue in this case, is what is meant by "commercial loss." CT Page 14851
 "Commercial Party" under Connecticut's Product Liability Act
A subpart of the main issue in this case is whether the parties are both considered a "commercial party", for if one is not, then there can be no commercial loss as between commercial parties, the very thing for which, under the act, recovery is precluded. The judicially created definitions of "commercial party" under the act are phrased differently in certain cases. For example, the court in Producto Machine Co. v. AjaxMagnethermic Corp., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0236005 (November 10, 1987, Burns, J.) (3 C.S.C.R. 66, 67) refers to commercial parties are "persons regularly engaged in business activities consisting of providing goods or services for compensation." Another court defined "commercial party" as one "participat[ing] in enterprises involved in work intended for the mass markets and . . . hav[ing] profit or success as [its] chief aim." BRTCorp. v. New England Masonry Co., Superior Court, judicial district of Litchfield, Docket No. 0048920 (October 25, 1991, Pickett, J.).
Regardless of the definition used, the parties in the present case are commercial parties. The plaintiff, Zurich, is an insurance company. The plaintiffs insured, McDonald's, is a restaurant. The defendant, Neon, is the manufacturer and seller of neon signs.
"It is axiomatic that an insurer may maintain a subrogation action to recover losses paid to an insured." Continental Casualty v. DentsplyInternational, Superior Court, judicial district of Waterbury, Docket No. 0124660 (February 15, 1996, McDonald, J.). It should be noted that although the plaintiff is seeking to recovery monies paid to its insured, "the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter." Orselet v. DeMatteo, 206 Conn. 542, 547, 539 A.2d 95 (1988). Therefore, because the underlying basis of the claim is the property damage sustained by McDonald's from a sign manufactured by the defendant, if recovery by McDonald's for such damage is available under the act, then recovery by the plaintiff insurance company is also available.
 "Commercial Loss" under Connecticut's Product Liability Act
What is not explicitly clear under the act is what is meant by "commercial loss." Unfortunately, Connecticut's appellate courts have not yet addressed this issue, and a split of opinion exists at the trial court level. The two seminal Superior Court cases from which the split has emerged are Producto Machine Co. v. Ajax Magnethermic Corp., Superior CT Page 14852 Court, judicial district of Fairfield at Bridgeport, Docket No. 0236005 (November 10, 1987, Burns, J.) (3 C.S.C.R. 66) (Producto) and AmericanManufacturers Mutual Insurance Co. v. Harrington Hoists, Inc., Superior Court, judicial district of New Haven, Docket No. 0262369 (June 13, 1989, Berdon, J.) (4 C.S.C.R. 564) (American Manufacturers). Producto offers an expansive view of commercial loss, defining it as "economic injury, whether direct, incidental or consequential, including property damage and damage to the product itself, incurred by personal regularly engaged in business activities consisting of providing goods and services for compensation." Producto Machine Co. v. Ajax Magnethermic Corp., supra, 3 C.S.C.R. 67. American Manufacturers, however, explains that commercial loss "merely has reference to consequential economic losses, and . . . does not include property damage or personal injury as between the commercial parties." American Manufacturers Mutual Ins. Co. v.Harrington Hoists, Inc., supra, 4 C.S.C.R. 565. Therefore, Producto and its progeny would bar recovery for property damage as between commercial parties, while American Manufacturers and its followers would allow recovery for property damage, although not necessarily for damage to the product itself. Essentially, it is the cases that follow either Producto and American Manufacturers on which the defendant and plaintiff, respectively, rely. Therefore, a discussion of each case is appropriate.
In Producto, the plaintiff alleged that a furnace purchased from the defendant allowed "15 to 18 tons of molten iron to escape and damage severely the . . . furnace, its components and the plaintiffs business premises . . ." and that the plaintiff "sustained and suffered losses and damages, including damage to the product, its property and loss of production, and incurred losses and expenses in the cleaning up of the molten metal material which had escaped onto [the] plaintiffs business premises." Producto Machine Co. v. Ajax Magnethermic Corp., supra,3 C.S.C.R. 66. The court addressed the issue "whether the term ["commercial loss"] includes damage to property, other than the product itself . . ." and concluded that if "commercial loss encompasses such damage, the plaintiff may only recover for these losses under the Uniform Commercial Code." Id., 67. In its analysis of the legislative history behind the amendment to the act to preclude recovery for commercial loss between commercial parties, the court quoted testimony before the Judicial Committee from Gregory Sweeney, Senior Assistant Division Counsel of Sikorsky Aircraft Division of United Technologies Corporation, who was the only person to make a statement regarding this issue: "[t]he . . . statute would permit commercial entities to bring product liability claims for property damage and personal injury damages caused by a product. However, commercial loss such as alleged lost profit, loss of commercial opportunities, loss of good will and the like, would not be sought under a product liability claim. Hearings on S.B. No. 578 Before CT Page 14853 the Judicial Committee, P.A. 84-509 (1984) at 747-49." Producto MachineCo. v. Ajax Magnethermic Corp., supra, 3 C.S.C.R. 67. Because the statement was made by a nonlegislator, however, the court refused to consider it when interpreting the statute. Id., citing Savings LoanLeague of Connecticut, Inc. v. CHFA, 184 Conn. 311, 315 n. 1, 439 A.2d 978
(1981).
Rather, the court relied on the decision in Verdon v. TransamericaInsurance Co., 187 Conn. 363, 372, 446 A.2d 3 (1982), released before the 1984 amendment to the act, which "construed the term "damage to property' as used in the product liability statute's definition of harm to encompass economic harm." Producto Machine Co. v. Ajax MagnethermicCorp., supra, 3 C.S.C.R. 67. While the court acknowledged that "[t]he damage to plaintiff's property is an economic loss which, prior to the 1984 amendment, would have been covered by the product liability statute," in light of the amendment, the court decided that "[s]uch an economic loss between commercial parties constitutes commercial loss" and adopted the broad definition of commercial loss as quoted above. Id. Instead of allowing recovery under the act, the court found that "the plaintiffs remedies [were] solely under Title 42a of the General Statutes, the Uniform Commercial Code," and quoted section 42a-2-715
(2), which provides, in relevant part, that consequential damages resulting from the seller's breach include . . . (b) injury to person or property proximately resulting from any breach of warranty." ProductoMachine Co. v. Ajax Magnethermic Corp., supra, 3 C.S.C.R. 67. Therefore, the court decided, "[s]ubsection (b), supra, would provide for recovery for damage to the plaintiffs property, other than the product itself, thus providing a commercial party with a remedy for commercial loss similar to that provided for noncommercial losses under the product liability statute." Id.
The facts in American Manufacturers involved "the defendant's sale of a defective hoist chain to the plaintiff, Schultz Electric Company, which broke causing damage to a 37,000 pound electric motor it was carrying and the premises." American Manufacturers Mutual Ins. Co. v. HarringtonHoists, Inc., supra, 4 C.S.C.R. 565. Like the case currently before this court, one plaintiff, American Manufacturers Insurance Company, sought, "under the subrogation terms of the policy, to be reimbursed for property damage it paid to the plaintiff Schultz Electric." Id.
While in American Manufacturers the court directed its analysis to the same issue regarding the definition of "commercial loss," its analysis was quite different. For example, it gave some weight to Mr. Sweeney's testimony because he "was the only person to testify as to what was meant by commercial loss before the committee and no definition was given on CT Page 14854 the floors of the House or the Senate," even though "[g]enerally, statements at public hearings by nonlegsiators are not admissible as a means of interpreting acts." (Emphasis added.) Id.
The court rejected the defendant's postion that the word "commercial" before the term "losses" was essentially insignificant, meaning, the defendant argued, that "commercial parties are precluded under the [act] from recovering all losses between them and that the commercial party's only redress is under the Uniform Commercial Code." (Emphasis added.) Id. Focusing on the actual words used in the statute and the view that "[n]o word in a statute should be considered as surplusage," the court explained that "the legislature specifically modified the type of loss which was precluded — that is, a `commercial loss'. To construe "commercial loss' as all losses between commercial parties would make the adjective "commercial' superfluous." (Internal quotation marks omitted.) Id. After reviewing Webster's Third New International Dictionary, the court decided that "[c]ommercial has reference to profits. . . . It is therefore clear that a "commercial loss' within the meaning of the [act] has reference to loss of profits or consequential economic losses as opposed to property damage and personal injuries." Id.
Since the release of these two decisions, it appears the majority of Superior Courts that have dealt with this issue, that is, "commercial loss" and damage to property, other than to the product itself, as opposed to losses which are truly economic or business related, such as lost profits or lost business opportunity, have held that damage to property is recoverable under the Product Liability Act and is not excluded by the limitation for commercial losses. In Tauck Tours, Inc.v. Mitchell Bailey, Inc., Superior Court, judicial district of Stamford, Docket No. CV 94 0142535 (May 6, 1997, D'Andrea, J.) (19 Conn.L.Rptr. 484), the plaintiff, Tauck Tours, Inc., filed an action against the defendants, Mitchell Bailey, Inc. (Mitchell), Vibration Eliminator Company, Inc. (Vibration) and Metraflex Company, Inc. (Metraflex) seeking recovery under the Product Liability Act for water damage to the plaintiffs building allegedly caused by the defendants. "The plaintiff allege[d] that a `flexible connector,' supplied by Vibration . . . and used by Mitchell . . . to attach two pipes in the main hot water line of the plaintiffs hotel building, failed . . . causing water damage. Specifically, the plaintiff [sought] to recover the large sums of money [expended] repairing such property and restoring it to its proper condition." (Internal quotation marks omitted.) TauckTours, Inc. v. Mitchell Bailey, supra, 19 Conn.L.Rptr. 484. Vibration filed a motion for summary judgment as to one of the counts in the plaintiffs complaint, arguing that "as between commercial parties, commercial loss caused by a product may not be covered under the PLA." CT Page 14855 Id., 484. The plaintiff responded with the argument that "property damage does not fall within the definition of `commercial loss,' and, therefore, that the plaintiff may pursue its claim under the PLA." Id., 484. After discussing the split of authority among the Superior Courts over the definition of commercial loss, the court noted that in the context of negligence, "the Connecticut Supreme Court recognized a clear distinction between commercial loss and property loss. Williams Ford,Inc. v. Hartford Courant Co., 232 Conn. 559, 583-84, 657 A.2d 212 (1995) (`the term "damage to property," as used in § 52-572h, does not include purely economic losses'). `In light of this distinction, [the Supreme Court] construed the phrase `damage to property' in General Statutes § 52-572h (b) to refer only to damage to or the loss of use of tangible property and not to encompass losses that are purely commercial.' Waters v. Autuori, 236 Conn. 820, 833-34, 676 A.2d 357."Tauck Tours, Inc. v. Mitchell Bailey, supra,19 Conn.L.Rptr. 484. Based on the Supreme Court cases, Judge D'Andrea adopted the definition in American Manufacturers, and "because the plaintiffs claims [were] for property damage, the plaintiff [was] not precluded by General Statutes § 52-572n (c) from pursuing its claim under the Product Liability Act." Id., 485.
Another case, factually similar to the case currently before this court, is Continental Casualty v. Dentsply International, Superior Court, judicial district of Waterbury, Docket No. 0124660 (February 15, 1996, McDonald, J.). It was "an action brought by Continental Casualty Co. (Continental), an insurance company, against the defendant, a manufacturer of dental office equipment, seeking reimbursement for damages it paid to insured parties pursuant to the terms of several property damage insurance properties." Continental Casualty v. DentsplyInternational, supra, Superior Court, Docket No. 0124660. The court explained the factual background: "During a weekend in 1993, a dental suction unit manufactured by Dentsply malfunctioned and caused flooding in the Westside Medical Center. . . . As a result of this flooding, office space occupied by the owner of the unit . . . and by the Westside Medical Group, P.C. (Westside), suffered extensive water damage. As a further result of this flooding, the entire Westside Medical Center was closed pending an inspection of its damaged electrical system." Id. Continental alleged that it "provided property damage insurance coverage to both [the owner of the unit] and Westside" and that "[p]ursuant to the terms of these policies, the plaintiff paid claims to [both] . . . and [now] seeks reimbursement from the defendant for these payments." Id.
The defendant moved for summary judgment, arguing that the plaintiff sought to recover damages for commercial losses under the Product Liability Act. After discussing both American Manufacturers and Producto CT Page 14856 and their progeny, the court chose not to adopt either definition, finding, instead, that "[w]hether this court adopts the [American Manufacturers] or Producto definition of `commercial loss', some of the property damage here complained of may be recoverable `harm' rather than the precluded `commercial loss'. Section 52-572m (d) simply does not preclude all claims for damages suffered by one who may at times be a commercial party; rather, only claims for `commercial loss' of commercial parties are relegated to the Uniform Commercial Code." Id. The court continued: "Here the Continental is making claims, among other things, for water damage to improvements and betterments of the premises, and its contents. These claims are not restricted to damages incurred by the insured as "persons regularly engaged in business activities' or as `a commercial party'." Id. While the court did agree that some property damage may be considered commercial loss, because there was an "absence of any more detailed description of the property damage in the complaint," it denied the motion for summary judgment.
One case on which the defendant relies in support of its argument that the definition in Producto should control is G. R. Cummings Co. v. BeazerEast, Inc., Superior Court, judicial district of New Haven, Docket No. 0328472 (July 7, 1992, Zoarski, J.) (7 C.S.C.R. 931). This reliance is misplaced. G. R. Cummings Co. (Cummings) filed a complaint against Beazer East, Inc. (Beazer), alleging that a roofing product from Beazer to be used in Cummings' roofing business was defective, causing the roof to develop serious leaks which the plaintiff was unable to repair. Beazer moved to strike the complaint, arguing, among other things, that the plaintiff should have brought the action under the Product Liability Act. The plaintiff responded that its claim was for a commercial loss, and, therefore, would be precluded under the act. In its analysis of whether the plaintiff could have brought its claim under the act, the court adopted the definition of "commercial loss" as found in American Manufacturers. Because the "losses alleged by the plaintiff [for roof repair and roof replacement] represent[ed] money that would have been profits from the job rather than personal injury or damage to the plaintiffs property," the losses were commercial losses, and the plaintiff would not have a claim under the act. G. R. Cummings Co. v.Beazer East, Inc., supra, 7 C.S.C.R. 932.
The defendant also argues that Connecticut General Life Ins. Co. v.Grodsky Service, Inc., 781 F. Sup. 897 (D. Conn. 1991) supports its argument. While the District Court did cite Producto and noted that the decision broadened the scope of "commercial loss" under the act, the District Court did not discount American Manufacturers. In fact, after observing that the issue had not been considered by any state or federal appellate court, the District Court speculated that "[t]he most plausible CT Page 14857 interpretation of the Connecticut `commercial loss' exclusion is that it intended . . . to exclud[e] direct or consequential economic loss but restrict the exclusion to litigation between commercial parties. Accordingly, while property damage, defined as physical damage and including damage to the product itself, could be recovered, direct or consequential economic damages could not. This is the apparent majority rule among the states." Connecticut General Life Ins. Co. v. GrodskyService, Inc., supra, 781 F. Sup. 900. Finally, as the defendant acknowledges, the court concluded "that `commercial loss' as used in [Connecticut General Statutes] §§ 52-572m (b) and 52-572n (c) includes all economic loss, direct or consequential, though possibly not physical property damage and damage to the product itself." Id., 901.
An example of a case that adopted the more expansive interpretation of "commercial loss" is one where the commercial plaintiff instituted a cause of action for damages under the act and alleged that "materials purchased from the [commercial] defendant, which were incorporated into piping installed by the plaintiff, were defective," and that the "defective materials caused the piping to fail, thereby causing the plaintiff to suffer substantial losses and damages as a result of the leakage of water that ensued." H. Grodsky Co. v. United States Pipeand Foundary Co., Superior Court, judicial district of New London, Docket No. 0533533 (January 24, 1996, Hurley, J.) (16 Conn.L.Rptr. 40). After recognizing the split of authority at the trial court level, the court adopted Producto's definition and granted the defendant's motion to strike the complaint on the ground that plaintiff alleged a commercial loss and was precluded from recovery under the Product Liability Act.
In situations where there is a split of opinion, it is often helpful to look beyond Connecticut's borders to ascertain whether other persuasive authority exists. In East River S.S. Corp. v. Transamerica Delaval,Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the United States Supreme Court examined product liability law and commercial loss in the context of admiralty law. While the specific issue with which the court dealt was whether, in tort, as between commercial parties, recovery was available for damage a defective product caused to itself, the court did examine the differences between recovery under a warranty theory and recovery in tort. "While giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of the bargain. . . . The expectation damages available in warranty for purely economic loss give the plaintiff the full benefit of its bargain by compensating for forgone business opportunities. . . . Recovery on a warranty theory would give the [commercial parties] their repair costs [for the defective product] and lost profits, and would place them in the position they would have been CT Page 14858 in had the [defective product] functioned properly." (Citations omitted.)East River S.S. Corp. v. Transamerica Delaval, Inc., supra, 476 U.S. 873. "In contrast, tort damages generally compensate the plaintiff for loss and return him to the position he occupied before the injury." Id., 873 n. 9.
The U.S. Supreme Court specifically addressed whether recovery for damages to the product, caused by the product, were recoverable under the theory of product liability: "[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." EastRiver S. S. Corp. v. Transamerica Delaval, supra, 476 U.S. at 871. Although East River S. S. Corp. is an admiralty case where the parties were commercial entities, the court's discussion offers insight into the issue at hand. "The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the cost of an injury and the loss of time or health may be an overwhelming misfortune, and one the person is not prepared to meet." (Internal quotation marks omitted.) East River S. S. Corp. v. Transamerica Delaval,476 U.S. at 871. As explained below, personal injury and, in light of the court's holding, damage to property other than the defective product are treated alike. Applying the court's distinction, in a situation where a defective product caused damage both to itself and other property or persons, a plaintiff, conceivably, could seek remedies both in contract for damage to the defective product and in tort for the other property and personal injuries.
The United States Court of Appeals for the Third Circuit has also examined this issue. "In Pennsylvania Glass Sand Corp. v. CaterpillarTractor Co., 652 F.2d 1165 (3d Cir. 1981) . . . this court explained the difference between economic loss and property damage: `The courts of most states . . . have classified the damages consequent to qualitative defects, such as reduced value, return of purchase price, repair and replacement, or lost profits, as economic loss, and have relegated those who suffer such commercial loss to the remedies of contract law. ConsumerPower Co. v. Curtiss-Wright Corp., 780 F.2d 1093, 1098 (3rd Cir. 1986). "`On the other hand, almost all courts have adopted the view that the benefit-of-the-bargain approach of warranty law is ill-suited to correct problems of hazardous products that cause physical injury. . . ." Id., 1099. In his dissent, Circuit Judge Weis noted that "only when the loss is attributable to bodily injury or damage to property other than the defective product itself is the remedy in tort." Id., 1101 (Weis, C.J., dissenting).
In another case, the United States Court of Appeals for the Seventh CT Page 14859 Circuit explained that the plaintiffs were "attempting to use tort law to recover the cost of replacing a defective product sold to them for use in their business. This cost is called in law an `economic loss,' to distinguish it from an injury to the plaintiffs person or property (property other than the product itself), the type of injury on which a products liability suit usually is founded. It would be better to call it a `commercial loss,' not only because personal injuries and especially property losses are economic losses, too — they destroy values which can be and are monetized — but also, and more important, because tort law is a superfluous and inapt tool for resolving purely commercial disputes. We have a body of law designed for such disputes. It is called contract law. Products liability has evolved into a specialized branch of tort law for use in cases in which a defective product caused, not the usual commercial loss, but a personal injury to a consumer or bystander.
"An increasing number of jurisdictions hold that tort law provides no remedy in a case in which the plaintiff is seeking to recover for a commercial loss rather than damage to person, property, or reputation. . . . The insight behind the doctrine is that commercial disputes ought to be resolved according to the principles of commercial law rather than according to tort principles designed for accidents that cause personal injury or property damage." (Citations omitted.) Millerv. United States Steel Corp., 902 F.2d 573, 574-75 (7th Cir. 1990). According to the Third Circuit, however, "[i]ncidental property damage . . . will not take a commercial dispute outside the economic loss doctrine." Miller v. United States Steel Corp., supra, 902 F.2d 576.
Seven years later, in another suit between two commercial parties, the Seventh Circuit noted that it had previously "distinguished economic loss [also referred to as commercial loss] from an injury to the plaintiffs person or property (property other than the product itself), the type of injury on which a products liability suit usually is founded." (Internal quotation marks omitted.) Cooper Power Systems, Inc. v. Union CarbideChemicals Plastics Co., Inc., 123 F.3d 675, 681 (7th Cir. 1997). The court explained that "[e]conomic losses can be direct or consequential. . . . Direct economic loss includes the cost of repair or replacement. . . . Consequential economic loss includes all indirect loss, such as lost profits, resulting from the product's inability to perform." (Citations omitted.) Id. For example, "[w]hen the loss to goodwill results from the failure of a product to perform as expected, and not from injury to another person or other property, those losses are commercial and are not recoverable in tort." Id. The court held that because the plaintiff had "no claim for personal injury or physical harm to property other than the defective product itself, its remedy lie [d] CT Page 14860 in a breach of warranty claim, not a claim in tort." (Internal quotation marks omitted.) Id., 682.
Public policy behind the creation of product liability law was discussed at length by the United States Supreme Court in East RiverS.S. Corp. v. Transamerica Delaval, Inc., supra, 476 U.S. 866 "Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty. . . . It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort." (Citation omitted.) Id., 866. The court explained that "[t]he paradigmatic products-liability action is one where a product "reasonably certain to place life and limb in peril,' distributed without reinspection, causes bodily injury. . . . The manufacturer is liable whether or not it is negligent because public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." Id. "For similar reasons of safety, the manufacturer's duty of care was broadened to include protection against property damage. . . . Such damage is considered so akin to personal injury that the two are treated alike." (Citations omitted.) Id., 867.
Prosser and Keeton have explained that "[t]he Uniform Commercial Code is generally regarded as the exclusive source for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself. Those who drafted the Uniform Commercial Code were without doubt thinking primarily about the intangible economic interest of those who purchase products." (Emphasis in original.) W. Prosser W. Keeton, Prosser and Keeton on The Law of Torts (5th Ed. 1984) § 95A, p. 680-81.
If between commercial parties only the warranty provisions of the U.C.C. provided for relief for all injuries, whether economic, personal or property-related, incurred by a commercial party from a defective product, every possible injury, from the mundane to the catastrophic, would have to be contemplated by the parties when entering into a transaction. If, as asserted by many opinions, commercial parties are more sophisticated and better able to take advantage of warranties, it is conceivable that all manufacturers, designers, and sellers of products would at least try, though warranties, to limit their liability for all injuries caused by their product and incurred by other commercial entities. Indeed, the court in Producto agreed when it explained that the "language of subsection (b) [of General Statutes § 42a-2-715 (2)] which requires that the damage "proximately' result from the breach of CT Page 14861 warranty, and comment 3 which states that a seller not wishing to take the risk of consequential damages may set contractual limits on the buyer's remedy, provide a safeguard against contractual recovery of damage only remotely connected to the breach." Producto Machine Co. v.Ajax Magnethermic Corp., supra, 3 C.S.C.R. 67.
If manufacturers, designers and sellers of products were able to limit their total liability in this way, they would have little incentive to protect the public, which certainly includes other commercial entities, from the hazards of dangerously defective products, thus thwarting the purpose and public policy behind product liability law. As quoted above, "[p]roducts liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty. . . . It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort." (Citation omitted.) East River S.S. Corp. v. Transamerica Delaval, supra, 476 U.S. 866. It is equally clear, however, that if warranties were allowed to prevent all claims in product liability actions between commercial parties, as some courts suggest, tort law would drown in a sea of contracts.
The plaintiff does not distinguish between damage to property other than the allegedly defective sign and the sign itself, or if the property for which the plaintiff seeks recovery includes the neon sign. Based on the cases cited above, recovery for the sign itself may be classified under the Product Liability Act as a true commercial loss and may not be recovered. Because it appears that the plaintiff seeks recovery for damage to some property other than the sign itself, and damage to such property is not considered "commercial loss" under the act, the motion to strike must be denied.
BY THE COURT
___________________ Kevin E. Booth, J. CT Page 14862